### PENNSYLVANIA STATE POLICE, Petitioner,

v.

### Dean C. HEGGENSTALLER, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2001.

Decided Oct. 16, 2001.

Joanna N. Reynolds, Harrisburg, for petitioner.

Richard Scheib, Williamsport, for respondent.

Before McGINLEY, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

The Pennsylvania State Police (the PSP) petition for review of an order of an Administrative Law Judge (ALJ), appointed by the Office of Attorney General (OAG), upholding the appeal of Dean C. Heggenstaller (Heggenstaller) from the denial of his application to purchase a firearm. We now reverse.

On January 11, 2000, Heggenstaller attempted to purchase a firearm at Coopers Sporting Goods in Mansfield, Pennsylvania. In response to an instantaneous records check request from the firearm licensee and pursuant to Section 6111.1(b) of the Pennsylvania Uniform Firearms Act of 1995 (Uniform Firearms Act), 18 Pa.C.S. § 6111.1(b), the PSP conducted a review of their criminal history, mental health and other relevant records to determine if Heggenstaller was prohibited from receipt or possession of a firearm under federal or state law. This review revealed a disqualifying event, i.e., a finding by the Department of Veterans Affairs (VA) in May of 1997 that Heggenstaller was mentally incompetent to manage his personal affairs, including disbursement of his VA benefits. Hence, his application was denied.

Heggenstaller thereafter filed an SP4–197 denial challenge form with the PSP. By letter dated January 24, 2000, the Director of the PSP's Firearms Division confirmed the denial, noting that Heggenstaller had previously been determined to be mentally defective under federal law. Heggenstaller then sent the PSP a letter dated January 27, 2000, further questioning his denial and submitting additional evidence regarding his VA disabilities and honorable discharge from the military. By letter dated February 7, 2000, the Director of the PSP's Firearms Division informed Heggenstaller that this additional evidence was reviewed, but that the denial was still upheld. In this letter, the Director cited Section 6105(c)(4) of the Uniform Firearms Act, 18 Pa.C.S. § 6105(c)(4), and Section 922(g)(4) of the Federal Gun Control Act of 1968 (Gun Control Act), 18 U.S.C. § 922(g)(4), as the basis for the PSP's denial.[1]

Heggenstaller thereafter filed an appeal of the PSP's denial with the OAG pursuant to Section 6111.1(e) of the Uniform Firearms Act, 18 Pa.C.S. § 6111.1(e). OAG assigned the case to the ALJ and hearings were scheduled and held on May 16, 2000, and June 16, 2000. At the first hearing, the PSP introduced into evidence a certified copy of a rating decision by the VA in May of 1997 finding that Heggenstaller lacked the mental capacity to manage his personal affairs. Heggenstaller then testified on his own behalf, indicating that he was unaware of any official VA determination declaring him incompetent. Rather, Heggenstaller indicated that he first became aware of such when the PSP denied his application to purchase a firearm.

During his testimony, however, Heggenstaller introduced a copy of a compensation and pension exam report, dated April 15, 1997, and authored by Dr. M. Jenner at the VA Medical Center in Bath, New York.[2] Dr. Jenner examined Heggenstal-

---

**1.** Section 6105(c)(4) of the Uniform Firearms Act prohibits any person "who has been adjudicated as an incompetent" from possessing a firearm. Section 922(g)(4) of the Gun Control Act provides that "it shall be unlawful for any person .... who has been adjudicated as a mental defective" to possess a firearm.

**2.** This report formed the basis for the VA's ultimate determination of Heggenstaller's incompetency.

ler on April 9, 1997, and concluded that he did not appear to be able to handle his own funds independently. Dr. Jenner did note a belief that said inability and cognitive disorder might be related to medication.[3] Heggenstaller also introduced a progress note dated February 24, 2000, from Dr. Norm Quirion, Staff Psychologist at the VA Medical Center in Bath. Dr. Quirion had treated Heggenstaller since 1993 and his note indicates his professional opinion that Heggenstaller was competent to manage his own financial affairs. In addition, Heggenstaller introduced a copy of an independent psychiatric evaluation performed by Dr. Jon Grigg on April 28, 2000, at the Mansfield Health Center of the Soldiers and Sailors Memorial Hospital in Wellsboro, Pennsylvania. Dr. Grigg concluded that Heggenstaller was clinically competent to handle his finances. Dr. Grigg noted that Heggenstaller had cognitive difficulties in the past as a result of over medication of psychotropics and pain medications.

At the second hearing in this matter, Heggenstaller introduced another progress note dated April 18, 2000, from Dr. Quirion, wherein he found Heggenstaller to be competent and further found no cognitive impairments which would cause him to be incompetent to manage his funds. Heggenstaller also introduced a letter from Dr. Edward Guelig, Heggenstaller's treating family physician for three years. Dr.

Guelig notes no incident that would make him medically incapable of handling a firearm. Further, Heggenstaller introduced two letters, the first dated March 31, 2000, and the second dated May 8, 2000, from Dr. Edmund Osgood at the Mental Health Associates of Northcentral Pennsylvania. Dr. Osgood counseled Heggenstaller and his family for over six years and he believes that he is safe to own a firearm. Dr. Osgood also notes that the VA's 1997 finding came at a time when Heggenstaller was seriously overmedicated. Also at this hearing, the PSP introduced a letter from the VA dated June 12, 2000, four days before this hearing, indicating that Heggenstaller remains "currently rated incompetent for VA purposes," but that it was in the process of reevaluating his competency due to two recent psychiatric evaluations.[4] (R.R. at 239a).

Approximately five months after the second and last hearing, the ALJ issued an order dated November 29, 2000, upholding Heggenstaller's appeal on the basis that the PSP had presented insufficient evidence to support its denial of Heggenstaller's application. The PSP thereafter filed a petition for review with this Court. The ALJ then issued an opinion in support of his order. In this opinion, the ALJ reviewed the procedures utilized by the VA in order to declare an individual incompetent.[5] The ALJ next reviewed the medical

---

3. At the time of this examination, Heggenstaller was taking approximately twenty-five different medications.

4. Included with this letter was a field examination report performed by the VA on February 22, 2000. This report determined that Heggenstaller was "now able to handle funds independently without supervision." (R.R. at 256a). The report later reiterated that Heggenstaller was "now capable of managing his VA benefits independently." *Id.* Further, this report requested a new competency exam.

5. The ALJ noted that Section 3.353 of Title 38 of the Code of Federal Regulations governs the VA's determination of competency and incompetency. This Section provides, in pertinent part, that (1) a "mentally incompetent person" is "one who because of injury or disease lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation;" (2) rating agencies have sole authority to make official determinations of competency and incompetency and (3) a finding of incompetency must be based upon medical evidence which

evidence submitted by Heggenstaller. Upon review of this evidence, the ALJ indicated that it appears that Heggenstaller's medical condition and the rating of the VA was "largely due to the medications prescribed by the [VA]." (ALJ's Decision at 7). The ALJ also noted the findings of the February 22, 2000, field examination report described above. While this report suggests a new competency exam be scheduled, the ALJ further noted the lack of proper notification of the same or of Heggenstaller's rights to challenge his current incompetency rating. The ALJ concluded that this evidence establishes that Heggenstaller is not disabled as a mental defective incapable of handling his own financial affairs and is free from the restrictions imposed by the Uniform Firearms Act and the Gun Control Act.

■■■ On appeal to this Court,[6] the PSP argue that the ALJ erred as a matter of law in upholding Heggenstaller's appeal, as it had sufficient justification to deny Heggenstaller the right to purchase a firearm based upon the VA's 1997 finding of mental incompetency and Section 922(g)(4) of the Gun Control.[7] We agree.

As noted above, Section 6111.1(b) of the Uniform Firearms Act authorizes the PSP to review their criminal history and mental health records to determine whether or not a party is prohibited from receipt or possession of a firearm. Also as noted above, Section 922(g)(4) of the Gun Control

Act provides that "it shall be unlawful for any person .... who has been adjudicated as a mental defective" to possess a firearm. 18 U.S.C. § 922(g)(4). The phrase "adjudicated as a mental defective" is defined by Department of Treasury regulations as "(a) [a] determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease .... (2) [l]acks the mental capacity to contract or manage his own affairs." 27 C.F.R. § 178.11(a)(2).

At the first hearing before the ALJ, the PSP introduced into evidence a certified copy of the rating decision by the VA in May of 1997, concluding that Heggenstaller was mentally incompetent to manage his personal affairs, including disbursement of his VA benefits. (R.R. at 87a–88a). Additionally, at this hearing, Heggenstaller himself introduced a copy of a compensation and pension exam report dated April 15, 1997, and authored by Dr. Jenner of the VA Medical Center in Bath, New York.[8] (R.R. at 89a–94a). This report followed Dr. Jenner's examination of Heggenstaller on April 9, 1997, and concluded that Heggenstaller was unable to "handle his own funds independently." (R.R. at 93a).

■■■ Furthermore, at the second hearing on this matter, the PSP introduced into evidence a letter from the VA dated

---

is "clear, convincing and leaves no doubt as to the person's incompetency." 38 C.F.R. § 3.353(a), (b)(1) and (c).

6. Our scope of review is limited to a determination of whether necessary findings are supported by substantial evidence, an error of law was committed or whether constitutional rights were violated. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Bellum v. Pennsylvania State Police*, 762 A.2d 1145 (Pa.Cmwlth.2000).

7. The PSP rely solely on federal law, i.e., Section 922(g)(4) of the Gun Control Act, in support of its argument and abandon any argument regarding state law, i.e., Section 6105(c)(4) of the Uniform Firearms Act.

8. As noted above, this report actually formed the basis for the rating decision in May of 1997.

June 12, 2000, indicating that Heggenstaller remains "currently rated incompetent for VA purposes," but that it was in the process of reevaluating his competency due to two recent psychiatric evaluations. (R.R. at 239a). The evidence described above constitutes sufficient justification to deny Heggenstaller the right to purchase a firearm. Thus, the ALJ erred as a matter of law in finding to the contrary and in upholding Heggenstaller's appeal.[9]

Accordingly, the order of the ALJ is reversed.

### ORDER

AND NOW, this 16th day of October, 2001, the order of the Administrative Law Judge is hereby reversed.

---

9. We note that the ALJ, in reviewing the evidence presented, appears to have rendered his own competency determination, contrary to that of the VA. In essence, the ALJ collaterally attacked the VA's competency determination. However, in so doing, the ALJ exceeded his authority and erred as a matter of law.