42 A.3d 976

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**David S. KNOBLE, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided March 28, 2012.

Risa Vetri Ferman, Norristown, Robert Martin Falin, Montgomery County District Attorney's Office, for Commonwealth of Pennsylvania.

John Craig Manning, Harrisburg, Linda J. Laub, PA Board of Probation & Parole, for Appellant Amicus Curiae, PA Board of Probation & Parole.

Elizabeth Louise Lippy, Fairlie & Lippy, PC, North Wales, for David S. Knoble.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

In February, 2005, appellee David Knoble entered an open guilty plea to charges of endangering the welfare of a child, corruption of minors, and criminal conspiracy to commit statutory assault, admitting he conspired with his then-wife for her

to engage in sexual intercourse with his 14–year–old son while he observed. He was sentenced to an aggregate term of one to two years imprisonment followed by four years probation and was ordered to comply with any special probation conditions imposed by the Pennsylvania Board of Probation and Parole.

After serving the sentence of imprisonment, Knoble was placed on probation; he signed an Acceptance for State Supervision form agreeing to abide by the special probation conditions imposed by the court and the supervising probation staff. One condition required successful completion of a sex offender outpatient program; Knoble was advised that termination from or unsuccessful completion of the program would constitute a probation violation. He underwent a sex offender intake assessment with the treatment facility and began attending a specialized high-risk weekly counseling group. Six months into his probationary term, Knoble was terminated from the program for dishonesty during his sexual history therapeutic polygraph tests and was arrested for violating his probation.

At Knoble's *Gagnon II* hearing,[1] Jon Welsh, a certified sex offender treatment specialist in charge of Knoble's sexual counseling group, testified that one of the primary stages of sex offender treatment is for an individual to take a sexual history therapeutic polygraph in order to objectively assess a participant's self-reported sexual history. After failing the polygraph, Knoble admitted during group treatment that he had been dishonest about his sexual history. Knoble took a second polygraph, and again disclosed during a subsequent group therapy session that he had been deceptive about essential aspects of his sexual history. Knoble admitted he had victimized other minors, and accepted responsibility for a sexual offense against a minor for which he had previously been acquitted. Due to his continued dishonesty, Knoble was released from the program.

---

1. *See Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (due process requires probationer be given preliminary (*Gagnon I*) and final (*Gagnon II*) hearing prior to revoking probation).

Following the hearing, the court revoked Knoble's probation, determining the sex offender treatment was a reasonable special probation condition which Knoble violated by not completing the program; the court sentenced Knoble on his underlying offenses.

The Superior Court reversed, concluding the questions posed during the polygraph tests improperly required Knoble to answer incriminating questions that would result in the divulgence of previously unreported criminal behavior. *Commonwealth v. Knoble*, No. 1883 EDA 2008, unpublished memorandum at 12, 981 A.2d 315 (Pa.Super. filed June 24, 2009). The court relied on *Commonwealth v. Shrawder*, 940 A.2d 436, 443 (Pa.Super.2007), which determined therapeutic polygraph tests were a proper element in sex offender treatment programs and did not violate the Fifth Amendment protection against self-incrimination so long as the inquiries related to the underlying sentenced offense and did not compel the participant to provide information which could be used against him in a subsequent criminal trial. The court also noted *Shrawder's* holding that if a probationer is asked to answer incriminating polygraph questions, he remains free to assert his Fifth Amendment privilege against self-incrimination. *Knoble*, at 9–10 (citing *Shrawder*, at 443).

The Superior Court found Knoble was repetitively asked about and often told to provide information regarding his sexual history and conduct unrelated to the underlying offense, and Knoble was discharged from the program when he admitted his dishonesty in answering those questions. *Id.,* at 12. Applying *Shrawder*, the Superior Court held such inquiries violated Knoble's Fifth Amendment rights, and the trial court erred in finding Knoble violated his probation. *Id.,* at 12–13.

We granted allocatur to determine "[w]hether the Superior Court erred in concluding a probationer may invoke his Fifth Amendment right against self-incrimination for an unrelated offense, regardless of whether the information will be used in subsequent criminal proceedings, and whether such

invocation must be made at the time of interrogation." *Commonwealth v. Knoble,* 605 Pa. 256, 988 A.2d 1288 (2010) (*per curiam*). As this issue involves a pure question of law, our standard of review is *de novo* and our review is plenary. *Commonwealth v. Patton,* 604 Pa. 307, 985 A.2d 1283, 1286 (2009).

■ The Fifth Amendment provides "no person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This prohibition not only permits the refusal to testify against one's self when a defendant in a criminal trial, but "in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the speaker] in future criminal proceedings." *Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (citation omitted).[2]

■■ The Fifth Amendment privilege is not self-executing, and answers are generally not considered compelled "within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." *Id.,* at 427, 104 S.Ct. 1136. "[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Id.* (quoting *Garner v. United States,* 424 U.S. 648, 654, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976)).

The Commonwealth contends there was no Fifth Amendment violation because Knoble's statements were not used against him at the probation revocation hearing or in any subsequent criminal case. It argues the constitutional right against self-incrimination only occurs if one has been compelled to act as a witness against himself in a criminal proceeding, and a probation revocation hearing does not constitute such a proceeding. *See Gagnon,* at 782, 93 S.Ct. 1756 (probation revocation not part of criminal prosecution). The Commonwealth concedes Knoble may dispute the statement's

**2.** We have held Article I, § 9 of the Pennsylvania Constitution affords no greater protections against self-incrimination than the Fifth Amendment to the United States Constitution. *Commonwealth v. Arroyo,* 555 Pa. 125, 723 A.2d 162, 166–67 (1999).

use in subsequent criminal proceedings other than those for which he has been convicted, but claims he has no constitutional right to preclude their use at the revocation hearing.

The Commonwealth also argues no Fifth Amendment violation occurred because Knoble failed to invoke his rights during sex offender therapy. It contends the right against self-incrimination is not self-executing, and Knoble's failure to raise the privilege during the polygraph examinations and interviews precludes his challenge to the statements at the revocation hearing. Thus, no Fifth Amendment violation occurred because Knoble was not compelled to answer over a valid claim of privilege.

Knoble contends the polygraph examinations should be deemed *per se* unconstitutional because the questions sought information regarding uncharged criminal conduct, which is impermissible under *Shrawder*.[3] He argues he was compelled to answer the polygraph questions within the meaning of the Fifth Amendment because his probation would be revoked if he did not participate and pass the examination. He believes his failure to raise the privilege should be excused due to his belief that he would be returned to prison if he did not answer the questions.

3. Knoble contends the Commonwealth never objected or made any argument at trial, and the Superior Court never addressed the issues before us now. The trial court found Knoble violated his special probation conditions because he was terminated from the program for dishonesty; the court did not directly discuss the constitutionality of the polygraph examinations, and only found they were therapeutic in nature. Trial Court Opinion, 7/23/08, at 5–7. On appeal, the Superior Court, relying on *Shrawder*, held polygraph questions exploring unreported past sexual conduct violate a probationer's Fifth Amendment right against self-incrimination. *Knoble*, at 12–13. In doing so, the court failed to address Knoble's failure to raise the claim. *See id.* In the current appeal, the Commonwealth, as a first-time appellant, reiterates its original argument that the statements were not used against Knoble in a subsequent criminal trial, and additionally notes Knoble failed to raise the non-self-executing constitutional protections. As it is the prerogative of an appellant to dispute the rationale used by the Superior Court in reaching its holding, the issues at hand are properly before us, and the Commonwealth is free to address Knoble's failure to raise his Fifth Amendment protections.

Knoble argues the information obtained from the examination need not be used against him in order for the polygraph to be considered unconstitutional, as the information sought could lead to the disclosure of facts that would establish guilt or provide an essential link by which guilt could be established. *See Commonwealth v. Saranchak*, 581 Pa. 490, 866 A.2d 292, 303 (2005) (Fifth Amendment privilege applies not only to disclosure of facts which would alone establish guilt, but to any fact which may provide essential evidentiary link by which guilt could be established). He also claims the information gained from the polygraph examination has been used against him as a means of probation violation, as a basis for new criminal charges raised against him, and could be used to establish a *modus operandi* permitting his prosecution in cases where he did not even know the victim.

The United States Supreme Court addressed the issue of Fifth Amendment application to probationers in *Murphy*, a factually similar case to the one before us. As part of his probation, Murphy was required to participate in a sex offender treatment program, report to his probation officer as required, and be completely honest with the officer in all matters. *Murphy*, at 422, 104 S.Ct. 1136. At some point, the probation officer was advised that during the course of treatment, Murphy admitted to a previous rape and murder. *Id.*, at 423, 104 S.Ct. 1136. The officer set up a meeting with Murphy, and Murphy admitted to the previous rape and murder. *Id.*, at 424, 104 S.Ct. 1136. The officer informed Murphy she had a duty to inform the authorities of the conduct; Murphy was eventually arrested and charged with first degree murder. *Id.*, at 424–25, 104 S.Ct. 1136.

The Court granted certiorari to consider whether "a statement made by a probationer to his probation officer without prior warnings is admissible in a subsequent criminal proceeding." *Id.*, at 425, 104 S.Ct. 1136. The Court noted the Fifth Amendment privilege speaks to compulsion and does not preclude voluntary testimony regarding incriminatory matters; therefore, if a speaker desires the privilege's protection, he must claim it, or his statement will not be considered

"compelled" within the meaning of the Constitution. *Id.*, at 427, 104 S.Ct. 1136 (citing *United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409, 87 L.Ed. 376 (1943)). The Court believed the general requirement to appear and truthfully answer questions did not convert otherwise voluntary statements into compelled ones unless one is required to answer over a valid claim of privilege. *Id.* Thus, if a speaker is confronted with questions the government should reasonably expect to elicit incriminating evidence, he must generally assert the privilege rather than answer the question if he wishes to avoid self-incrimination. *Id.*, at 429, 104 S.Ct. 1136.

The Court noted, while there are well-defined exceptions to this general rule, the exceptions involve some "identifiable factor" which effectively denies the witness the option to admit, deny, or refuse to answer. *Id.* (citing *Garner*, at 657, 96 S.Ct. 1178). The Court found no such factor present, and specifically found Murphy's meeting with his probation officer did not amount to a custodial interrogation requiring *Miranda* warnings. *Id.*, at 429–30, 104 S.Ct. 1136; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, as Murphy did not assert his privilege, the probation officer's testimony regarding the incriminating statements was admissible. *Murphy*, at 440, 104 S.Ct. 1136.

The current situation appears to us even less imposing than that in *Murphy*. Knoble agreed to enter and regularly attend outpatient sex offender treatment. Special Conditions of Parole, 5/23/07, at 2. He acknowledged by signature that he would be required to take polygraph examinations as part of the treatment to determine his involvement in criminal sexual activity and that unsuccessful completion of the program would constitute a direct probation violation, which could result in probation revocation. *Id.* Importantly, he was aware he could challenge the special conditions if he felt them inappropriate or a violation of his rights. *Id.*, at 3; *see also* Conditions Governing Special Probation/Parole, 11/26/06, at 2.

Knoble was clearly not in custody at the time of the polygraph so as to warrant *Miranda* warnings. There was no police supervision during his therapy; the treatment was out-

patient in nature, and Knoble arrived and attended the sessions independently. Knoble knew he was able to challenge the conditions of his probation; thus, he was aware he could challenge the polygraph test, which he knew he would have to submit to as a probation condition. Knoble cannot pretend he never expected to be asked about his past criminal endeavors while on probation as "the nature of probation is such that probationers should expect to be questioned on a wide range of topics relating to their past criminality." *Murphy*, at 432, 104 S.Ct. 1136. There is no suggestion Knoble was in some way misled by any expectation of confidentiality at any point, as he knew his probation officer would be privy to the information disclosed and in fact signed a limited confidentiality waiver, consenting to unrestricted communication between the program staff and his probation officer. Acknowledgment of Limited Confidentiality and Waiver, 5/29/07, at 1; Sexual Offender Treatment Contract, 5/29/07, at 1–2. In sum, one can hardly suggest Knoble was "compelled" within the meaning of the Fifth Amendment, when he knew the terms of his probation, was aware of his ability to challenge the terms prior to beginning his treatment, and failed to raise any such challenge either before or during questioning.

Knoble argues he was compelled to answer the questions within the meaning of the Fifth Amendment, because his probation would be revoked if he did not pass the polygraph, and his failure to raise the privilege should be excused due to his belief he would be returned to prison if he did not fully participate. Essentially, Knoble argues his situation falls within an exception to the general rule requiring a witness to raise his Fifth Amendment privilege, such that the protection against self-incrimination is self-executing.

The *Murphy* Court addressed and rejected a similar argument. The Court noted an exception to the general requirement of raising the privilege exists if assertion of the privilege is penalized, such that it precludes the witness's free choice to maintain his silence. *Murphy*, at 434, 104 S.Ct. 1136; *see Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ("when a State compels testimony by threat-

ening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution."). The Court found a probation condition requiring a defendant to appear and be completely honest with his probation officer or face revocation did not imply he would be punished with revocation for invoking his right against self-incrimination. *Murphy,* at 436–37, 104 S.Ct. 1136. If, however, the government in any way asserts that a probationer's claiming of the privilege would lead to probation revocation, the privilege is self-executing, and the incriminating statements are deemed compelled and excluded from a criminal trial. *Id.,* at 435, 104 S.Ct. 1136.

The Court noted Murphy was only required to be truthful, and no probation condition indicated his probation was conditional upon his waiving his Fifth Amendment rights with respect to future prosecution. *Id.,* at 437, 104 S.Ct. 1136. Accordingly, because the probation conditions did not require Murphy to choose between making incriminating statements and jeopardizing his conditional liberty, the Court found the Fifth Amendment privilege was not self-executing. *Id.,* at 436, 104 S.Ct. 1136.

Here, as in *Murphy,* nothing in the record suggests Knoble's probation would have been revoked if he raised his Fifth Amendment privilege, either in challenging the terms of his probation or during the polygraph examination itself. In fact, the option of challenging the terms was clearly open and available to him. Furthermore, if his probation was revoked, his probation violation would result in a hearing, at which point he could argue the probation condition was unreasonable, the violation was excusable, and the need for confinement did not outweigh governing probation policies. *See* 42 Pa.C.S. 9771 (revocation of probation order requires hearing and proof of violation). In short, the probation condition did not require Knoble to choose between incriminating himself and jeopardizing his liberty. Therefore, the privilege was not self-executing, and Knoble's failure to raise his Fifth Amendment protection cannot be excused.

In any event, Knoble's admissions were not the basis for the eventual revocation; rather, he was dismissed for his continued dishonesty in the program. *See* Discharge Letter, 11/30/07, at 1 ("Knoble's unsuccessful discharge is secondary to a pattern of deceit in his treatment, which he himself has acknowledged . . . in direct violation of his signed sexual offender treatment contract . . ., which states that he will 'actively and honestly participate in the therapy process, self-disclose. . . .' "). At Knoble's resentencing, the court stated he was

being sentenced for the technical [probation] violation . . . not being sentenced for [prior sexual offenses]. . . . *That conduct was before he was initially sentenced and is not a violation of probation and is not charged as such. . . .* [Further,] [p]erjury is not a violation of probation, it was not listed as a violation of probation, and he has not been convicted of perjury. As I have indicated, *he is being sentenced for failing to complete the sex offender treatment program.*

N.T. Sentencing, 5/29/08, at 44 (emphasis added). As the revocation was independent of the incriminating content of Knoble's admissions, and would have occurred regardless of whether his incriminating statements were revealed at the hearing, the Fifth Amendment is not implicated.

 With these facts in mind, we find therapeutic polygraphs containing inquiries asking a participant to provide information that could be used against him in a subsequent criminal trial do not inherently violate the Fifth Amendment. Participation in a therapeutic polygraph examination does not fall within the exception to the general rule that the Fifth Amendment protection must be raised or waived. Accordingly, a probationer who agrees to submit to such an exam as a condition of his probation may raise his Fifth Amendment privilege prior to submitting to the examination or when answering polygraph questions regarding uncharged criminal actions; however, the probationer waives his right to such protection if he does not invoke it upon questioning.

As Knoble failed to raise his Fifth Amendment privilege, his statements given during his therapy may be used against him. Moreover, as his probation was revoked, not for admission of his prior behavior, but because he violated his special probation conditions, no Fifth Amendment violation occurred.

The Superior Court's order is reversed, and the case is remanded for reinstatement of the trial court's sentencing order.

Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.