# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert R. Gorry,                          :
                          Petitioner      :
                                          :
                    v.                    :     No. 2168 C.D. 2015
                                          :     Submitted:  May 13, 2016
Pennsylvania State Police,                :
                          Respondent      :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER                      FILED:  July 15, 2016


        Robert R. Gorry (Applicant) petitions for review of an October 8, 2015,
Order of an Administrative Law Judge (ALJ) of the Office of the Attorney General
sustaining a decision by the Pennsylvania State Police (State Police) to deny
Applicant the right to purchase a firearm pursuant to Section 6105(c)(4) of the
Uniform Firearms Act of 1995 (UFA)[1] and Section 922(g)(4) of the Federal Gun

---

[1] 18 Pa. C.S. § 6105(c)(4).  Section 6105(c)(4) of the UFA prohibits the purchase of firearms by:

A person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act.  This paragraph shall not apply to any proceeding under section 302 of the Mental Health Procedures Act unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.

*(Continued…)*

Control Act of 1964 (GCA).[2]  On appeal, Applicant argues that he should not be prohibited from purchasing a firearm because he *voluntarily* consented to mental health care in 2012 and the law only prohibits the purchase of firearms by a person *involuntarily* committed.  Because substantial evidence supports the ALJ's conclusion that the State Police met its burden to show by a preponderance of the evidence that Applicant was involuntarily committed, we affirm.

Applicant attempted to purchase a firearm on June 9, 2015, and failed the required background check by the State Police.  An examination of Applicant's criminal and mental health history through the Pennsylvania Instant Check System (PICS) revealed that Applicant was prohibited from purchasing a firearm as a result being involuntarily committed pursuant to Sections 302 and 303 of the Mental Health Procedures Act[3] (MHPA).  Applicant filed a timely challenge of his denial with the State Police.  (R.R. at 1a-4a.)  In his challenge Applicant indicated that he was never "adjudicated incompetent or involuntarily committed."  (Id. at 1a.)  By letter dated July 10, 2015, the State Police denied his challenge and notified Applicant of the basis of his denial.  The letter informed Applicant, in relevant part that "the basis for your denial can be found under 18 Pa. C.S. [§] 6105(c)(4).  Also, federal law 18 U.S.C. [§] 922(g)(4), restricts any person

Id.

[2] 18 U.S.C. § 922(g)(4).  Section 922(g)(4) of the GCA provides:

It shall be unlawful for any person--  . . .  who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Id.

[3] Act of July 9, 1976, P.L. 817, as amended, 50 P.S. §§ 7302, 7303

adjudicated as a mental defective or involuntarily committed to any mental institution. Your involuntary commitments in 2012 are prohibiting." (S.R.R. at 38b.)

Applicant appealed his denial to the Office of Attorney General, which assigned the case to an ALJ. A hearing was held on October 8, 2015, where Applicant and Stephanie Dunkerley, legal assistant supervisor of the State Police's PICS Challenge Section, testified.

At the hearing, the State Police presented a packet of evidence provided to the State Police by the Lehigh County Mental Health Review Officer. The documents included an "Application for Involuntary Emergency Examination and Treatment" pursuant to Section 302 of the MHPA (Section 302 Application) completed by a social worker and two physicians at Sacred Heart Hospital in Allentown, Pennsylvania. (Id. at 46b-52b.) The document states that Applicant was admitted to the facility on May 18, 2012, and that treatment was "initiated" on May 21, 2012. (Id. at 46b.) Part VI of the Section 302 Application was completed by Farhad Sholevar, M.D., and states that Applicant was examined on May 21, 2012, and that, in Dr. Sholevar's opinion, "[t]he patient is severely mentally disabled and in need of treatment. He should be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours." (Id. at 52b.)

The packet of documents also included an "Application for Extended Involuntary Treatment" pursuant to Section 303 of the MHPA (Section 303 Application). (Id. at 41b-45b.) Part II of the Section 303 Application affirms that Applicant was informed of the actions taken pursuant to the application and that Applicant understood his rights. (Id. at 42b.) Part III of the Section 303

3

Application shows that Peter Gross, M.D. concluded on May 24, 2012, that "[Applicant] continues to be severely mentally disabled and in need of treatment." (Id. at 42b-43b.) After a hearing, at which Applicant did not attend but was appointed counsel, the Court of Common Pleas of Lehigh County (common pleas), through the Lehigh County Mental Health Review Officer, ordered that Applicant be committed to inpatient treatment at Sacred Heart Hospital for a period of not exceeding 20 days. (Id. at 44b.)

Applicant submitted a document entitled "Consent for Voluntary Inpatient Treatment" dated May 16, 2012. Therein, Applicant consented to "treatment which has been explained to me" and affirmed that in order to leave the facility he "must give 72 hours advance notice in writing to those in charge of my treatment." (Id. at 53b.) Applicant testified to the ALJ that he consented to be committed for mental health treatment on May 16 because he was in distress from a recent open-heart surgery and stayed at the facility for 22 days. (Id. at 18b-19b.) Applicant testified that he never revoked his consent to be committed and was never notified that there was a hearing on involuntary commitment. (Id. at 18b, 20b.)

Upon review of the evidence, the ALJ concluded that the State Police met its burden of proof that Applicant was involuntarily committed to a mental health institution pursuant to Sections 302 and 303 of the MHPA and denied Applicant's appeal. (Id. at 29b-30b; Order, R.R. at 10a.) Applicant now petitions this Court for review.

**DISCUSSION**

The process by which an applicant may challenge a denial of the right to purchase a firearm due to a failed PICS check is set forth in Section 6111.1(e) of

4

the UFA, 18 Pa. C.S. § 6111.1(e). First, an applicant may "challenge the accuracy of that person's . . . mental health record" to the State Police. 18 Pa. C.S. § 6111.1(e)(1). "If the challenge is ruled invalid, the person shall have the right to appeal the decision to the Attorney General" where a de novo hearing will be held before an ALJ and the State Police bears the burden to prove the accuracy of the mental health record. 18 Pa. C.S. § 6111.1(e)(3). The standard of proof in a proceeding before an ALJ is a preponderance of the evidence standard. Pa. State Police v. Slaughter, ___ A.3d ___, ___ (Pa. Cmwlth., No. 858 C.D. 2015, filed March 21, 2016), slip op. at 15. That is, an ALJ must affirm the State Police's determination if the State Police presents evidence showing that it is "more likely than not" that the applicant was involuntarily committed pursuant to Sections 302 or 303 of the MHPA. Id. The Attorney General's determination may be appealed to this Court. 18 Pa. C.S. § 6111.1(e)(4). "Our scope of review [of the Attorney General's decision] is limited to a determination of whether necessary findings are supported by substantial evidence, an error of law was committed or whether constitutional rights were violated." Pa. State Police v. Heggenstaller, 784 A.2d 853, 856 n.6 (Pa. Cmwlth. 2001).

On appeal, Applicant argues that his hospital records show that he voluntarily agreed to mental health treatment recommended by his physician. Applicant argues that the "Consent for Voluntary Inpatient Treatment" form admitted into the record and his hospital discharge paperwork, included in the Reproduced Record submitted to this Court by Applicant without first presenting the document to the ALJ, shows that he was not involuntarily committed. Applicant also contends that the package of documents submitted to the ALJ by the State Police shows that physicians recommended that he be involuntarily

5

committed, but that these documents are nothing more than recommendations and did not serve to involuntarily commit him when he already voluntarily committed himself.

Sections 6105(a)(1) and 6105(c)(4) of the UFA provides, that "[a] person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the [MHPA]" "shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa. C.S. §§ 6105(a)(1), 6105(c)(4). We recently explained the application of Sections 302 and 303 of the MHPA to Section 6105 of the UFA as follows:

> Generally, under Section 302 of the MHPA, an emergency mental examination of a patient may be undertaken where a physician certifies an examination is needed or an authorized county administrator approves a warrant for examination. R.H.S. v. Allegheny Cnty. Dep't of Human Servs., Office of Mental Health, 936 A.2d 1218 (Pa. Cmwlth. 2007) (citing 50 P.S. § 7302). A patient must be examined within two hours after arrival at a treatment facility. Id. If the examination reveals the patient needs treatment, it must begin immediately. Id. If treatment is not necessary, the patient must be discharged. Id. In any event, the patient must be discharged within 120 hours unless it is determined further treatment is necessary or the patient voluntarily seeks additional treatment. Id. Additionally, under Section 303(a) of the MHPA ("Persons Subject to Extended Involuntary Emergency Treatment"), an application for extended involuntary emergency treatment "may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours." 50 P.S. § 7303(a).

Slaughter, ___ A.3d at ___, slip op. at 12-13 (emphasis omitted).

6

Similarly, Section 922(g)(4) of the GCA provides that "it shall be unlawful for any person--. . . who has been adjudicated as a mental defective or who has been committed to a mental institution" to possess a firearm. 18 U.S.C. § 922(g)(4). According to the Department of Justice's regulations, "[c]ommitted to a mental institution" is defined as

> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

27 C.F.R. § 478.11.

The evidence presented to the ALJ shows that Applicant consented to mental health treatment on May 16, 2012, pursuant to Section 201 of the MHPA.[4] Applicant was subsequently *involuntarily* committed on May 21, 2012, to an initial period not exceeding 120 hours pursuant to Section 302 of the MHPA. (S.R.R. 52b-53b.) Four days later, after a hearing, Applicant was *involuntarily* committed for an additional 20 days pursuant to Section 303 of the MHPA on May 25, 2012.

---

[4] 50 P.S. § 7201. Section 201 of the MHPA states, in relevant part:

> Any person 14 years of age or over who believes that he is in need of treatment and substantially understands the nature of voluntary treatment may submit himself to examination and treatment under this act, provided that the decision to do so is made voluntarily. . . . [e]xcept as otherwise authorized in this act, all of the provisions of this act governing examination and treatment shall apply.

Id.

(Id. at 40b-44b.) The fact that Applicant initially consented to treatment does not undermine the documents showing that Applicant was involuntarily committed days later as an initial consent to treatment may be converted into an involuntary commitment. See, e.g., In re S.B., 777 A.2d 454, 459 (Pa. Super. 2000) (affirming a decision to convert a Section 201 admission to a Section 303 admission). While the General Assembly has stated a preference for voluntary inpatient treatment of mental health disorders, a voluntary commitment may be converted into an involuntary commitment when necessary. In re J.S., 586 A.2d 909, 914 (Pa. 1991).

Applicant contends that the documents show nothing more than a recommendation by his physicians that he be committed and cannot be used to show that he actually was involuntarily committed. We disagree. The State Police submitted a completed Section 303 Application. (S.R.R. at 40b-45b.) The Section 303 Application is produced on a standard form, Form MH-784, developed by the Department of Public Welfare[5] (Department) which is mandatory for all Section 303 commitments. See 55 Pa. Code § 5100.87(c)(2), (e)(1) (stating that "[i]f the [mental health] facility determines that extended emergency *involuntary* treatment is necessary" it shall "immediately deliver an application upon Form MH-784 to the court or Mental Health Review Officer" and that "[c]ertification for extended emergency *involuntary* treatment shall be made in writing on Form MH-784, issued by the Department") (emphasis added). Part IV of the MH-784 Form, titled "Certification by the Court for Extended *Involuntary* Emergency Treatment – Section 303," states:

---

[5] As of December 2014, the Department of Public Welfare was redesignated the Department of Human Services.

8

> The court finds that the patient [is] severely mentally disabled and in need of treatment. Accordingly, the court orders that [Applicant] receive: [inpatient treatment] which is the least restrictive treatment setting appropriate for the patient of Sacred Heart Hospital as a severely mentally disabled person pursuant to the provisions of Section 303 of the Mental Health Procedures Act of 1976 for a period of not to exceed [20] days.

(S.R.R. at 44b.) This document was signed by the Lehigh County Mental Health Review Officer on behalf of common pleas. (Id.)

The State Police also submitted a completed Section 302 Application on Form MH-783 issued by the Department and required for all Section 302 commitments. See 55 Pa. Code § 5100.86(a) ("Written applications, warrants, and written statements made under section 302 of the act (50 P.S. § 7302), shall be made on Form MH-783 issued by the Department"). The Section 302 Application contains a statement by Dr. Sholevar that Applicant is "severely mentally disabled and in need of treatment. He should be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours." (S.R.R. at 52b.) A completed Form MH-783 independently establishes that Applicant was *involuntarily* committed pursuant to Section 302 because, unlike a Section 303 commitment which requires a hearing and a court order, a Section 302 commitment may be undertaken "upon the certification of a physician stating the need for such examination; or . . . upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination." Section 302(a) of the MHPA, 50 P.S. § 7302(a).

While both Form MH-784 and Form MH-783 require physicians to detail results of their examinations and recommend treatment, these documents have legal significance as they trigger Section 302 and 303 commitments. As such, we conclude that these documents represent substantial evidence supporting the ALJ's

9

conclusion that Applicant is prohibited from purchasing a firearm pursuant to Section 6105(c)(4) of UFA and Section 922(g)(4) of GCA.

Finally, Applicant argues that his hospital records prove that he consented to mental health treatment. As discussed above, even if Applicant initially consented to treatment, the evidence shows that Applicant was subsequently involuntarily committed. Furthermore, Applicant's hospital record is not part of the certified record because he did not present this evidence to the ALJ. "For purposes of appellate review, that which is not part of the certified record does not exist." B.K. v. Dep't of Pub. Welfare, 36 A.3d 649, 657 (Pa. Cmwlth. 2012).

For the foregoing reasons, the Order of the ALJ for the Office of the Attorney General is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert R. Gorry,                                       :
                              Petitioner               :
                                                       :
                    v.                                 :     No. 2168 C.D. 2015
                                                       :
Pennsylvania State Police,                             :
                              Respondent               :

# **O R D E R**

    **NOW**, July 15, 2016, the October 8, 2015 Order by an Administrative Law Judge of the Office of the Attorney General, entered in the above-captioned matter, is hereby **AFFIRMED**.

                                          _____

                                          **RENÉE COHN JUBELIRER,** Judge