IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,                    :
                              Petitioner      :
                                              :
        v.                                    :  No. 1848 C.D. 2016
                                              :  Argued:  June 8, 2017
Richard Brandon,                              :
                              Respondent      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
SENIOR JUDGE PELLEGRINI                        FILED: July 3, 2017


        The Pennsylvania State Police (PSP) petitions for review of an Order
of an Administrative Law Judge (ALJ) of the Office of the Attorney General
(OAG) reversing a decision by the PSP to deny Richard Brandon (Brandon) a
license to carry a firearm pursuant to Section 6105(c)(4) of the Uniform Firearms
Act (UFA).[1]  For the reasons that follow, we affirm.

_____

    [1] 18 Pa. C.S. § 6105(c)(4).  Section 6105 of the UFA prohibits the possession, use,
control, sale, transfer or manufacture of a firearm by:

> A person who has been adjudicated as an incompetent or who has
> been involuntarily committed to a mental institution for inpatient
> care and treatment under section 302, 303 or 304 of the provisions
> of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental
> Health Procedures Act [(MHPA)].  This paragraph shall not apply

**(Footnote continued on next page…)**

**I.**

On September 26, 2013, Brandon submitted an application to the Butler County Sheriff's Office for a license to carry a firearm (license). That application was denied pursuant to Section 302 of the Mental Health Procedures Act (MHPA)[2] because his criminal and mental health history obtained through the Pennsylvania Instant Check System (PICS) revealed that Brandon had been involuntarily committed to a mental institution for inpatient care and treatment.

---

**(continued…)**

> to any proceeding under section 302 of the [MHPA] unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.

[2] 50 P.S. § 7302. This Court has explained the application of Section 302 as follows:

> Generally, under Section 302 of the MHPA, an emergency mental examination of a patient may be undertaken where a physician certifies an examination is needed or an authorized county administrator approves a warrant for examination. *R.H.S. v. Allegheny County Department of Human Services, Office of Mental Health*, 936 A.2d 1218 (Pa. Cmwlth. 2007) (citing 50 P.S. § 7302). A patient must be examined within two hours after arrival at a treatment facility. *Id.* If the examination reveals the patient needs treatment, it must begin immediately. *Id.* If treatment is not necessary, the patient must be discharged. *Id.* In any event, the patient must be discharged within 120 hours unless it is determined further treatment is necessary or the patient voluntarily seeks additional treatment. *Id.*

*Pennsylvania State Police v. Slaughter*, 138 A.3d 65, 72 (Pa. Cmwlth. 2016).

Brandon then filed with the PSP a challenge to the accuracy of his PICS history.[3] While acknowledging that he had previously been arrested in Butler County, Brandon alleged that he had never been involuntarily committed. By letter dated December 11, 2013, the PSP denied Brandon's challenge based on records that he had two involuntary commitments at Butler Memorial Hospital on January 11, 1987, and June 23, 1994, respectively. Brandon appealed that denial to the OAG, arguing that he was never involuntarily committed and that no records exist to prove that he had been involuntarily committed. The OAG appointed an ALJ to hear the matter.

Marlin Rose (Rose), the Mental Health Emergency Coordinator for Butler County, testified at a hearing before an ALJ that he supervises those who issue warrants for Section 302 commitments and that his office is responsible for notifying the PSP whenever an individual is involuntarily committed. Rose specifically testified that his office does *not* report voluntary commitments to the PSP. Rose acknowledged, though, that Butler County's mental health department did not have the underlying Section 302 petitions for Brandon for either of his

---

[3] Section 6111.1(e)(1) of the UFA provides, in pertinent part, that "[a]ny person who is denied the right to receive, sell, transfer, possess, carry, manufacture or purchase a firearm as a result of the procedures established by this section may challenge the accuracy of that person's . . . mental health record pursuant to a denial by the instantaneous records check by submitting a challenge to the [PSP] within 30 days from the date of the denial." 18 Pa. C.S. § 6111.(e)(1).

purported involuntary commitments, explaining that during that timeframe, his office did not receive copies of such petitions.[4]

Rose went on to testify that Incident Report Emergency Services (IRES) forms are regularly generated by his office after an entire incident has transpired, and that he identified two IRES forms regarding Brandon. The IRES form pertaining to Brandon's 1994 incident stated that Trooper Daniel Herr petitioned for the Section 302 commitment, signifying that he considered Brandon a clear and present danger to himself and others. The IRES form stated that Brandon suffered third degree burns after being involved in a motorcycle accident. Brandon would not let a doctor treat his burns, was unable to care for himself, would not voluntarily sign for treatment, and was in danger of losing his leg. The form also stated that Brandon had a shotgun strapped to his back at the time of his accident. Rose confirmed that his office would not complete an IRES form indicating a Section 302 disposition unless a physician certified that the individual was severely mentally disabled, and this particular form lists a Dr. Schumacher as the physician involved.

Rose testified that the1987 IRES form also stated that Brandon was subject to a Section 302 commitment and transferred to a medical facility for treatment after threatening his roommate with a rifle. The form goes on to state that Brandon was restrained upon his admission and made statements such as

---

[4] In response to a question from the ALJ, Rose testified that it was *possible* the facilities that treated Brandon in 1987 and 1994 could have copies in their records of the underlying 302 petitions.

4

"They are trying to kill me." (Reproduced Record (R.R.) at 6a.) The disposition section of the 1987 form states "302 Involuntary Commitment. Transferred to St. Francis (New Castle) for treatment." (*Id.*) Over the objections of Brandon's counsel, the ALJ admitted the two IRES forms into evidence.

Christopher Clark (Clark), supervisor of the PSP's PICS Challenge Section, then testified that Brandon was denied a license based on those two mental health commitments. Clark testified that the PSP's mental health database indicated that the PSP received notice in 1999 of Brandon's two involuntary commitments. However, he acknowledged that the PSP no longer had copies of the two notices in its records. Clark also testified that the PSP did not have any 302 petitions for Brandon in its records because prior to the effective date of the PICS system in 1998,[5] the PSP only received notices of the commitments and not copies of the actual Section 302 petitions. Clark acknowledged that the printouts from the PSP's mental health database did not indicate what section of the MHPA Brandon was committed under because the PICS system did not have those fields programmed in 1999 when the notices were received.

---

[5] *See* 18 Pa. C.S. § 6111.1(b)(3). Act 77 of 1996 also amended the MHPA to require, *inter alia*, judges of the courts of common pleas, mental health review officers and county mental health and intellectual disability administrators to notify the PSP, via a specific form, of any individual adjudicated incompetent or involuntarily committed to a mental institution for inpatient care and treatment under the MHPA, or who was involuntarily treated as described in section 6105(c)(4) of the UFA. *See* Act of July 2, 1996, P.L. 481, No. 77, *as amended*, 18 Pa. C.S. § 6111.1(f).

The PSP also presented a police report regarding Brandon which stated, in pertinent part, that on January 11, 1987, "Accused was transported to the Butler Memorial Hospital for treatment where he became disorderly. Accused was placed in the Psychiatric Unit following treatment." (R.R. at 4a.) Brandon's counsel objected to the police report on the basis of hearsay because the police officer was not available to testify. The PSP's counsel indicated that he only sought to admit the above-quoted two sentences of the report and the ALJ admitted that portion of the document into the record.

The PSP issued a subpoena for Brandon to testify, seeking to present him as a witness in its case-in-chief. Brandon's counsel objected on several grounds, including the Fifth Amendment privilege against self-incrimination. The ALJ held that Brandon had the ability to invoke his Fifth Amendment right not to testify in this civil proceeding, reasoning that his testimony could potentially subject him to prosecution.[6]

---

[6] The privilege against self-incrimination applies not only "in a criminal trial, but 'in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the speaker] in future criminal proceedings.'" *Commonwealth v. Knoble*, 42 A.3d 976, 979 (Pa. 2012) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)); *see also City of Philadelphia v. Kenny*, 369 A.2d 1343 (Pa. Cmwlth.), *cert. denied*, 434 U.S. 923 (1977). However, we note that in civil proceedings, this privilege is not self-executing, *Knoble*, 42 A.3d at 979, and can only be asserted "when a witness is asked a question which requires an incriminating answer." *Department of Transportation, Bureau of Driver Licensing v. Vogt*, 535 A.2d 750, 753 (Pa. Cmwlth. 1988). Here, it appears Brandon's claim that his privilege against self-incrimination would have been prejudiced was purely speculative as he refused to testify and was never asked a single question by the PSP. *See McDonough v. Department of Transportation, Bureau of Driver Licensing*, 618 A.2d 1258 (Pa. Cmwlth. 1992). Failure to testify in a civil proceeding can support an adverse inference, specifically, that the failure to testify serves to corroborate the opposing party's proffered evidence. *Harmon v. Mifflin County School District*, 713 A.2d 620, 623 (Pa. 1998). "Also, the failure to testify to facts within one's presumed knowledge permits an inference that can erase the equivocal nature of other evidence relating to a disputed fact." *Id.*
**(Footnote continued on next page…)**

The day after the hearing, the ALJ issued an order denying Brandon's appeal. Brandon filed an emergency motion for reconsideration, and the ALJ granted his request for a stay pending reconsideration. Following the submission of briefs, the ALJ issued a three-sentence order sustaining Brandon's request for relief and ordering the PSP to amend the PICS database to remove the disability imposed under 18 Pa. C.S. § 6105(c)(4) with respect to Brandon. The PSP then filed a petition for review.

On November 24, 2015, in an unreported opinion, this Court vacated the ALJ's order pursuant to 2 Pa. C.S. § 507 because the ALJ failed to set forth findings or reasons for his adjudication. *Pennsylvania State Police v. Richard Brandon (Brandon I)*, (Pa. Cmwlth., No. 841 C.D. 2015, filed November 24, 2015). The case was remanded for the ALJ to issue an opinion stating such findings, with the caveat that "[w]e leave to the thoughtful discretion of the ALJ to determine whether to re-open the record for additional circumstantial evidence, such as hospital records." *Id.*, Slip Opinion at 13.

## II.

Following remand, the ALJ re-opened the record and the parties entered a joint stipulation indicating that the PSP had obtained records from Butler

---

**(continued…)**

(citation omitted). However, the PSP failed to raise this argument before the ALJ or on appeal; therefore, the issue is not before this Court.

Memorial, West Penn and St. Francis hospitals.[7]  The records from West Penn Hospital indicate Brandon was not seen at that facility.  However, a billing record from Butler Memorial Hospital indicates that after Brandon was treated there on June 22, 1994, he was discharged to West Penn Hospital.  Correspondence from the Manager of Medical Records for Butler Memorial Hospital states that additional records for Brandon were no longer available due to the hospital's ten-year record retention policy.[8]  Similarly, a document from St. Francis Hospital titled "Certification of Medical Records Custodian" states that no records were found for Brandon because "Records from January 11th, 1987 are destroyed." (R.R. at 113a.)

The ALJ then issued findings indicating that there was nothing in the record to corroborate the statements in the two IRES forms.  The ALJ found that in this particular case, the IRES forms were not enough to sustain the PSP's burden of proving that Brandon had been involuntarily committed.  This appeal followed.[9]

---

[7] The record reflects that Brandon objected to the PSP's request to re-open the record. The joint stipulation specifically states that Brandon preserved this objection, but would not require the PSP to lay a foundation for the authenticity of the hospital records or require testimony from any records custodians prior to admission of the records into evidence.

[8] State law only requires that medical records be preserved for at least seven years. *See* 28 Pa. Code § 115.23.

[9] Our review is limited to whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings are supported by substantial evidence. *See* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Gorry v. Pennsylvania State Police*, 144 A.3d 214, 217 (Pa. Cmwlth. 2016) (citing *Pennsylvania State Police v. Heggenstaller*, 784 A.2d 853, 856 n.6 (Pa. Cmwlth. 2001)).

### III.

The PSP argues that the ALJ erred in upholding Brandon's appeal because it met its burden of establishing, by a preponderance of the evidence,[10] that Brandon was prohibited from obtaining a license under Section 6105(c)(4) of the UFA due to his previous Section 302 involuntary commitments.

The PSP relies upon the two IRES forms and the admitted portion of the 1987 police report in support of this argument. It is uncontested that these documents would normally be considered hearsay as they include "statement[s], other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted." Pa. R.E. 801(c). However, under Section 6104 of the Judicial Code, 42 Pa. C.S. § 6104, the documents qualify under the official records exception to the hearsay rule.[11] It provides:

---

[10] It is well settled that "[t]he standard of proof required in a proceeding before an ALJ is a preponderance of the evidence standard." *Gorry*, 144 A.3d at 217 (citing *Pennsylvania State Police v. Slaughter*, 138 A.3d 65, 73 (Pa. Cmwlth. 2016)). This is the lowest evidentiary standard and, as such, "an ALJ must affirm the [PSP]'s determination if the [PSP] presents evidence showing that it is 'more likely than not' that the applicant was involuntarily committed pursuant to Section 302 or 303 of the MHPA." *Gorry*, 144 A.3d at 217 (citing *Slaughter*, 138 A.3d at 73).

[11] In addition, we also note that Section 505 of the Administrative Agency Law provides that "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa. C.S. § 505. As such, our Supreme Court has held that "hearsay evidence may generally be received and considered during an administrative proceeding." *D'Alessandro v. Pennsylvania State Police*, 937 A.2d 404, 411-12 (Pa. 2007) (citing *A.Y. v. Department of Public Welfare*, 641 A.2d 1148, 1150 (Pa. 1994)).

**(a) General rule.**--A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

**(b) Existence of facts.**--A copy of a record authenticated in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, **unless the sources of information or other circumstances indicate lack of trustworthiness.**

42 Pa.C.S. § 6104 (emphasis added).

Brandon instead relied on the absence of the business records and inconsistencies in those records as evidence to show that the event that purportedly occurred in the business record did not, in fact, occur.[12] Moreover, evidence of the absence of a record of an act, event or condition may be introduced to prove the nonoccurrence or nonexistence thereof, if the matter is one which would ordinarily be recorded. *See Klein v. F.W. Woolworth Co.*, 163 A. 532 (Pa. 1932) (absence of person's name in personnel records admissible to prove that he was not an employee).

In this case, the ALJ chose to accept Brandon's evidence over that of the PSP's records because of the inconsistencies in the documents. The ALJ also

_____

[12] Relevant evidence is that evidence that has the tendency to make a fact more or less probable than it would be without the evidence. Pa. R.E. 401.

found the PSP's records untrustworthy because the two IRES forms regarding Brandon's commitment were not corroborated by any underlying hospital or court records. Specifically, the ALJ noted that the records from West Penn Hospital contradict the 1994 IRES form as the records state that Brandon was *not* seen at that facility. The ALJ also notes that while the 1987 IRES form states that Brandon was transferred to St. Francis Hospital, the police report fails to indicate this transfer. Finally, the police report merely states that Brandon was placed in the psychiatric unit without specifying whether this was a voluntary or involuntary commitment or what provision of the MHPA the purported commitment was effectuated under.

Determinations regarding credibility and weight of the evidence are solely within the discretion of the ALJ as fact finder. *R.J.W. v. Department of Human Services*, 139 A.3d 270, 287 (Pa. Cmwlth. 2016) (citing *DePaolo v. Department of Public Welfare*, 865 A.2d 299, 305 (Pa. Cmwlth. 2005)). "As an appellate court, we cannot disregard the credibility determinations of the fact finder." *1st Steps International Adoptions, Inc. v. Department of Public Welfare*, 880 A.2d 24, 36 (Pa. Cmwlth. 2005) (citation omitted). The ALJ explained why he did not find the PSP's documentary evidence to be credible, and we will not overturn this credibility determination on appeal.[13] Moreover, in reviewing the

---

[13] In support of its position, the PSP cites to our recent decision in *Pennsylvania State Police v. Slaughter*, 138 A.3d 65 (Pa. Cmwlth. 2016), which also involved a PICS challenge. That case is distinguishable as there was significantly more evidence to support the PSP's assertion that the licensee had been previously involuntarily committed, including: a document titled Mental Health Record that indicated licensee was subject to an involuntary committal at Temple University Hospital; certified mental health records from the Philadelphia Department of Behavioral Health and Intellectual Disability Services indicating licensee was involuntarily **(Footnote continued on next page…)**

sufficiency of the evidence, we must view the evidence, and all reasonable inferences derived therefrom, in the light most favorable to Brandon as he prevailed before the ALJ.

Accordingly, the order of the ALJ is affirmed.[14]

_____
DAN PELLEGRINI, Senior Judge

_____

**(continued…)**

committed pursuant to Section 302 of the MHPA; notice of licensee's involuntary commitment that was sent to the PSP; and a petition to extend licensee's involuntary commitment pursuant to Section 303 of the MHPA, which was later withdrawn after licensee agreed to a voluntary commitment under Section 201 of the MHPA.

[14] In his brief, Brandon also raises several alternative arguments challenging the constitutionality of the civil commitment process and claiming that the MHPA fails to provide individuals with due process. Given our disposition, these issues will not be addressed.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,      :
                 Petitioner    :
                             :
       v.                   :    No. 1848 C.D. 2016
                             :
Richard Brandon,             :
                 Respondent : 

# **O R D E R**

AND NOW, this 3rd day of July, 2017, the order of the Administrative Law Judge of the Office of the Attorney General in the above-captioned matter is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge