J-S13009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEJANDRO RUIZ CABRERA, | |
| Appellant | No. 1071 EDA 2015 |

Appeal from the Judgment of Sentence Entered December 18, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0008513-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 03, 2017**

Appellant, Alejandro Ruiz Cabrera, appeals from the judgment of sentence of an aggregate term of 4 to 8 years' incarceration, followed by 10 years' probation, imposed after a jury convicted him of corrupt organizations, 18 Pa.C.S. § 911(b)(1), dealing in unlawful proceeds, 18 Pa.C.S. § 5111(a)(1), criminal use of a communication facility, 18 Pa.C.S. § 7512(a), possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(3), and criminal conspiracy to commit PWID, 18 Pa.C.S. § 903(a).  We affirm.

We need not summarize the complicated facts and procedural history of this case, as the Honorable Thomas P. Rogers of the Court of Common

---

[*] Former Justice specially assigned to the Superior Court.

Pleas of Montgomery County sets forth a lengthy and detailed discussion of those matters in his Pa.R.A.P. 1925(a) opinion. *See* Trial Court Opinion (TCO), 6/21/16, at 1-18. We only note that on appeal, Appellant raises the following three issues for our review:

> (1). Whether the [trial] court committed an error of law and/or abuse of discretion when it denied [Appellant's] post[-]sentence motion for a new sentence because the sentence was unduly harsh and excessive?
>
> (2)[]. Whether the [trial] court committed an error of law and/or abuse of discretion when it denied [Appellant's] motion at trial and in [his] post[-]sentence motion[] for a new trial where the verdict was against the weight and sufficiency of [the] evidence and the Commonwealth failed to present sufficient evidence for the trier of fact to find [Appellant] guilty of the crimes charged?
>
> [(3)]. Whether the [trial] court committed an error of law and/or abuse of discretion when it allowed [evidence of] prior unadjudicated acts, via testimony of Trooper Martinez, alleged to have occurred in Berks County where Appellant would have had to waive his Fifth Amendment rights and in violation of Due Process to defend himself in Montgomery County having not yet been adjudicated in Berks County?

Appellant's Brief at 5 (unnecessary capitalization omitted).

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed Judge Rogers' thorough and well-crafted opinion. We conclude that Judge Rogers accurately disposes of the issues presented by Appellant. We find no need to add anything further to Judge Rogers' well-reasoned analysis, especially considering the minimally developed, and legally unsupported, arguments

that Appellant presents in his brief to this Court.[1]  Accordingly, we adopt

Judge Rogers' opinion as our own and affirm Appellant's judgment of

sentence on that basis.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/3/2017

_____

[1] Indeed, we could conclude that Appellant has waived his first two issues for our review, based on his failure to provide any meaningful discussion in support of those claims.  For instance, in regard to his challenge to the discretionary aspects of his sentence, Appellant only briefly summarizes certain statements made by him and the court at the sentencing proceeding, and then concedes that he "cannot specifically identify a manifest abuse of discretion" by the court in fashioning his term of incarceration.  Appellant's Brief at 11.  Additionally, in his second issue challenging the sufficiency and weight of the evidence to support his convictions, Appellant provides only four sentences of discussion, cites no legal authority, and does not even state which specific offense(s), or element(s) thereof, that the Commonwealth failed to prove.  Accordingly, we could deem Appellant's first two issues abandoned or waived.  ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (directing that an appellant must "present arguments that are sufficiently developed for our review" and support those arguments "with pertinent discussion, … references to the record and with citations to legal authorities[;]" where an appellant fails to meet these requirements, thus "imped[ing] our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived").

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA

v.

ALEJANDRO RUIZ-CABRERA

: SUPERIOR COURT
: NO. 1071 EDA 2015
:
: TRIAL COURT
: NO. 8513-2013

**ROGERS, J.**

**JUNE 21, 2016**

## *OPINION*

### I.  INTRODUCTION

Alejandro Ruiz-Cabrera ("Appellant") has appealed to the Superior Court of Pennsylvania ("Superior Court") from his judgment of sentence following a three-day jury trial resulting in a verdict of guilty on one (1) count of corrupt organizations,[1] two (2) counts of possession with intent to deliver a controlled substance,[2] two (2) counts of criminal conspiracy to commit possession with intent to deliver a controlled substance,[3] one (1) count of dealing in unlawful proceeds[4] and one (1) count of criminal use of

---

[1]  18 Pa.C.S.A. § 911(b)(1).

[2]  35 P.S. § 780-113(a)(30).

[3]  18 Pa.C.S.A. § 903(a).

[4]  18 Pa.C.S.A. § 5111(a)(1).

a communication facility[5] for his role in a narcotics operation spanning two counties.

The court sentenced Appellant to not less than three (3) years nor more than six (6) years of incarceration on each of the two (2) convictions for criminal conspiracy to commit possession with intent to deliver, to run concurrent to one another, with a consecutive ten-year probationary period; a concurrent term of not less than fifteen (15) months nor more than thirty (30) months on the conviction for corrupt organizations, with a ten-year consecutive term of probation to run concurrent to the criminal conspiracy sentences; a concurrent term of not less than one (1) nor more than two (2) years of incarceration on one of the convictions for possession with intent to deliver a controlled substance with a five-year consecutive term of probation, the sentence to run concurrent with the sentence on corrupt organization, a consecutive term of one (1) to two (2) years' incarceration with a five-year probationary period on the conviction for dealing in unlawful proceeds, and a determination of guilt without further penalty on the remaining count for possession with intent to deliver a controlled substance and the count for criminal use of a communication facility.

The undersigned granted the Commonwealth's motion to *nol pros* counts 2, 3, 9, 10, 11, 13, 14, 15, 16, 17 and 18. In essence, the court imposed an aggregate sentence of four (4) to eight (8) years' incarceration

---

[5] 18 Pa.C.S.A. § 7512(a).

2

to be followed by ten (10) years of probation, all to run consecutive to the sentence imposed in Berks County in a corresponding case wherein Appellant had pled guilty to other narcotics offenses. Appellant's appeal merits no relief.

## II.   FACTS AND PROCEDURAL HISTORY

The relevant facts and procedural history underlying this appeal are as follows. Detective Erick Echevarria of the Montgomery County Detective Bureau, acting undercover in an ongoing narcotics investigation,[6] met co-defendant Jose DeJesus Montilla ("Montilla") on December 17, 2012, in Mount Penn, Berks County, Pennsylvania, to discuss the quantity of cocaine and methamphetamine Montilla would be able to sell to Detective Echevarria. (Notes of Testimony ("N.T.") Trial 9/16/14, at 15-16). In particular, Detective Echevarria told Montilla that he was interested in obtaining three (3) to four (4) pounds of crystal methamphetamine a week if Montilla could handle that amount. (Id. at 16). Montilla told Detective Echevarria that he could indeed handle that amount but that he would have to talk to his "brother" first. (Id. at 17). On that date, Montilla sold Detective Echevarria an ounce (28 grams)

---

[6] A number of law enforcement agencies were involved in the investigation of this drug trafficking organization, including the Montgomery County District Attorney's Narcotics Enforcement Team, the Berks County District Attorney's Narcotics Enforcement Team, the Federal Drug Enforcement Administration (DEA), the United States Department of Homeland Security, Immigration and Customs Enforcement and Removal Operations, Exeter Township Police Department, Douglass Township Police Department and the Pennsylvania State Police. (Notes of Testimony ("N.T.") Trial 9/16/14, at 39; N.T. Sentencing 12/18/14, at 10-11; Affidavit of Probable Cause, filed 10/7/13, at 5).

3

of crystal methamphetamine for one thousand eight hundred dollars ($1,800.00). (*Id.*).

Detective Echevarria met with Montilla again on January 25, 2013 at Zerns Farmers Market in Montgomery County. (*Id.* at 23). Montilla mentioned that he had eight (8) ounces of cocaine available for sale. (*Id.* at 25-26). Detective Echevarria told Montilla that he was concerned with the quality of the cocaine and that what Detective Echevarria was really interested in was obtaining crystal methamphetamine. (*Id.* at 25). As the pair walked around Zerns Farmers Market, Montilla was on his cell phone talking with someone. (*Id.* at 26). Montilla explained to Detective Echevarria that Montilla had people there with him. (*Id.*). One of Montilla's concerns was that the undercover detective was with law enforcement. (*Id.* at 22). As they rounded a corner at the market, the pair came upon two Hispanic males. (*Id.* at 27). Detective Echevarria shook the hand of both individuals and noted that one of them sat on a bench talking on the phone to someone else during the encounter. (*Id.*). Detective Echevarria recognized the other individual as co-defendant Juan Carlos Morales-Soria ("Morales-Soria"). (*Id.*). As Detective Echevarria shook Morales-Soria's hand in leaving, Morales-Soria slipped Detective Echevarria a small bag containing a sample of cocaine. (*Id.* at 28). Detective Echevarria was instructed to contact Montilla to place an order. (*Id.* at 30).

4

Later that same afternoon, Detective Echevarria contacted Montilla on Montilla's cell phone to place an order for two (2) ounces of cocaine. (*Id.*). Montilla told Detective Echevarria that someone else would meet him at Zerns Farmers Market. (*Id.* at 31). Morales-Soria subsequently contacted Detective Echevarria and they agreed to meet at Zerns. (*Id.*). Morales-Soria asked Detective Echevarria for a description of his car and told Detective Echevarria that he was in a black Ford Expedition. (*Id.*). As Detective Echevarria sat in the parking lot at Zerns, Morales-Soria entered Detective Echevarria's undercover vehicle and sat next to the Detective. (*Id.* at 32). The pair agreed to a price of two thousand dollars ($2,000.00) for the two (2) ounces of cocaine. (*Id.*). As Morales-Soria sat in the front passenger seat, he took apart an energy drink can that he had brought with him and removed the cocaine from a false compartment in the can. (*Id.*). Morales-Soria told Detective Echevarria that they could get him whatever quantity of cocaine or methamphetamine that he wanted, but to go through Montilla to place an order. (*Id.* at 32, 35). Because of Montilla's concern that Detective Echevarria may be law enforcement, he did not contact Montilla for several months. (*Id.* at 38).

In or around June of 2013, Pennsylvania State Police Trooper Geraldo Martinez became actively involved in an ongoing investigation concerning a narcotics organization known to be trafficking large quantities of crystal methamphetamine in Reading, Berks County and the surrounding areas. (*Id.* at 139). Specifically, on June 10, 2013, Trooper

Martinez contacted Appellant on Appellant's primary cell phone,[7] having previously received information that Appellant was one of approximately four (4) main players in this organization. (*Id.* at 140). Trooper Martinez then drove to the garage on the 400 block of North 9th Street in the city of Reading where Appellant worked as a mechanic and asked to purchase fourteen (14) grams of crystal methamphetamine. (*Id.* at 141). After Appellant made a phone call in Spanish to his "boss" to obtain approval to negotiate the price, eventually the pair came to an agreement that Trooper Martinez would pay Nine Hundred Dollars ($900.00) for the methamphetamine and Appellant would provide a sample of a higher grade methamphetamine at no additional cost. (*Id.* at 142-45).

Appellant told Trooper Martinez that the methamphetamine was located across the street and that he would need some time to retrieve it. (*Id.* at 141). Trooper Martinez left the garage and received a call a few minutes later from Appellant, who told the Trooper to meet him on the 900 block of Green Street in Reading. (*Id.* at 145-46). Trooper Martinez spotted Appellant walking in an alleyway, at which point Appellant entered and sat in Trooper Martinez's front passenger seat and they exchanged the fourteen (14) grams of crystal methamphetamine for $900 in prerecorded U.S. currency. (*Id.* at 146). No money was exchanged for the sample that Appellant provided at the same time. (*Id.*).

---

[7] Both Trooper Martinez and Detective Echevarria called or sent text messages to Appellant's primary cell phone number (484) 557-3652 to arrange narcotics buys. (N.T. Trial 9/16/14, at 105, 140). Appellant also provided Trooper Martinez with a secondary phone number of (484) 529-7983. (*Id.* at 155).

6

Trooper Martinez contacted Appellant on his cell phone again on July 10, 2013, to purchase more crystal methamphetamine. (*Id.* at 146-147). Trooper Martinez again met Appellant at the garage in the 400 block of North 9th Street and placed an order for another fourteen (14) grams of crystal methamphetamine. (*Id.* at 147-148). Trooper Martinez left the area to await Appellant's call that he had the "tires" for the Trooper to come and examine. (*Id.* at 149). When the Trooper arrived, Appellant produced a small white plastic bag containing crystal methamphetamine from a secret compartment inside of an Arizona Tea can. (*Id.* at 150). Trooper Martinez paid Appellant Nine Hundred and Eighty Dollars $980.00 in prerecorded U.S. currency for the crystal methamphetamine in that plastic bag and left. (*Id.*).

On July 31, 2013, Trooper Martinez called Appellant on Appellant's cell phone to place another order for crystal methamphetamine. (*Id.* at 150-51). Trooper Martinez went to the same garage to meet Appellant, only this time Appellant told Trooper Martinez that he only had the higher grade crystal methamphetamine available to sell to the Trooper, a sample of which Appellant had already provided. (*Id.* at 151-52). The two men agreed on a price. (*Id.*). Again, Appellant called Trooper Martinez to come back to the garage to look at the "tires" when Appellant had the narcotics available. Again, Appellant pulled a plastic bag containing crystal methamphetamine out of a hidden compartment in an Arizona Tea can and gave it to Trooper Martinez in exchange for One Thousand Forty

7

Dollars ($1,040.00) in prerecorded currency. (*Id.* at 152-153).[8] When Trooper Martinez expressed his amusement over the compartment in the tea can, Appellant pointed to an Aqua Fina water bottle sitting atop a toolbox which Appellant explained also had a concealed compartment underneath the label. (*Id.* at 153-54).

After a break in communication of approximately seven (7) months, Montgomery County Detective Echevarria contacted Montilla on August 6, 2013, to inquire about purchasing more crystal methamphetamine. (*Id.* at 38). Detective Echevarria and Montilla discussed a sale of at least one (1) pound of crystal methamphetamine to take place on August 12, 2013. (*Id.* at 39). However, on the morning of August 12, 2013, Detective Echevarria received a phone call from Montilla, who said his boss now wanted to provide just a sample first. (*Id.*).

The two men engaged in a back and forth discussion concerning the location where someone would meet Detective Echevarria because the Detective declined to move more than once. (*Id.* at 40). Detective Echevarria then received a call from Morales-Soria, who also tried to get Detective Echevarria to move to a third location approximately forty (40) minutes away, but Detective Echevarria refused. (*Id.* at 41). Finally,

---

[8] The Commonwealth charged Appellant separately in Berks County for the offenses committed solely in Berks County. *See Commonwealth v. Alejandro Ruiz-Cabrera*, Berks County Docket No. CP-06-CR-0000031-2014. Eventually, Appellant entered an open guilty plea to three (3) counts of delivery of a controlled substance under 35 P.S. § 780-113(a)(30). The Honorable Stephen B. Lieberman sentenced Appellant to incarceration for an aggregate period of not less than fifteen (15) months nor more than ten (10) years. *Id.*

8

Montilla told Detective Echevarria to stay put, that someone would come to him and Montilla gave Detective Echevarria Appellant's cell phone number. (*Id.* at 42).

Detective Echevarria called Appellant's cell phone and Appellant told Detective Echevarria that he was on his way and would meet the Detective in the parking lot at the McDonald's in Gilbertsville, near Zerns Farmers Market. (*Id.* at 43, 77). Appellant arrived in the parking lot as a front-seat passenger in a black pickup truck. (*Id.* at 44; Trial Exhibits C-7, C-8). Appellant exited the pickup truck and entered the front passenger side of Detective Echevarria's undercover vehicle. (*Id.* at 46). The two men talked about the confusion, and Appellant explained that Detective Echevarria would continue to place orders through Montilla in the future but that Appellant would deliver the narcotics. (*Id.* at 46). Appellant provided Detective Echevarria samples of crystal methamphetamine in two (2) plastic bags that Appellant removed from a secret compartment in the bottom of a water bottle. (*Id.*). One of the bags contained a sample of the higher grade, darker methamphetamine and the other bag contained a sample of the clearer crystal methamphetamine. (*Id.* at 47). Appellant did not ask for any money, and Detective Echevarria did not give Appellant any money for the samples. (*Id.* at 48). After Appellant exited the vehicle, Detective Echevarria called Montilla and told him that everything went okay. (*Id.* at 49).

Detective Echevarria next telephoned Montilla on August 27, 2013, to conclude the deal to purchase at least one (1) pound of methamphetamine. Montilla explained that the price had risen from twenty-seven thousand dollars ($27,000.00) to thirty thousand dollars ($30,000.00) for the pound of higher grade methamphetamine. (*Id.* at 52-53). Eventually they agreed that Detective Echevarria would also purchase thirteen thousand dollars ($13,000.00) of the lower grade crystal methamphetamine. (*Id.* at 53). They scheduled the exchange for August 31, 2013, at around 5:00 p.m. at the McDonald's in Gilbertsville. (*Id.* at 54, 77).

At approximately 2:50 p.m. on August 31, 2013, Corporal Pasquale Leporace from the Berks County District Attorney's Office set up surveillance on the 400 block of North 9th Street in Reading based on information the District Attorney's office had about this organization. (*Id.* at 59, 61). Corporal Leporace noticed two (2) individuals sitting inside of a parked Dodge Charger. (*Id.* at 62). To get a better view and a possible identification, Corporal Pasquale drove by the parked vehicle and identified co-defendant Alder Hernandez-Solorio ("Hernandez-Solorio"). (*Id.* at 64). After Corporal Pasquale turned around and drove back, he saw the two men from the Charger speaking with the driver of the same black pickup truck that law enforcement had seen Appellant riding in as a passenger to deliver the methamphetamine to Detective Echevarria on August 12, 2013. (*Id.* at 65).

10

Detective Echevarria arrived at the McDonald's in Gilbertsville at around 5:00 p.m. and let Montilla know that he had arrived. (*Id.* at 77). Montilla directed him to move across the street to Zerns Farmers Market. (*Id.* at 77-78). Montilla informed Detective Echevarria that he would be in a blue Kia. (*Id.* at 78).

Detective Michael Reynolds of the Montgomery County District Attorney's Office was working that day as a surveillance officer to assist in the investigation and help protect Detective Echevarria. (*Id.* at 67, 69). As Detective Reynolds was entering the Zerns Farmers Market parking lot, he observed a Dodge Charger occupied by two (2) males, later identified as co-defendants Hernandez-Solorio and Eloy Solorio-Flores. (*Id.* at 70, 89). Detective Reynolds confirmed with other law enforcement that this Dodge Charger was the same vehicle observed earlier in the afternoon up on the 400 block of North 9th Street in Reading. (*Id.* at 71). The Dodge Charger eventually parked in front of the Kia and Detective Echevarria's undercover vehicle. (*Id.* at 72-73).

After Detective Echevarria and supporting law enforcement officers had moved their vehicles to the Zerns' parking lot, Detective Echevarria approached the blue Kia Sorento SUV on foot. (*Id.* at 79). He noticed that someone other than Montilla was seated in the Kia and later identified the man as co-defendant Hector Cucuas ("Cucuas"). (*Id.*). After Cucuas told Detective Echevarria that he was a friend of Montilla's, Detective Echevarria asked to see the methamphetamine. (*Id.* at 80). Once

11

Detective Echevarria confirmed that the box inside of a bag in the back seat of the Kia contained narcotics, he gave a portion ($4,000.00) of the agreed-upon price to Cucuas and explained that he had to return to his car to get the rest. (*Id.* at 80, 83-84, 87). Detective Echevarria then returned to his undercover vehicle to provide some separation for other law enforcement on the scene to make their arrests. (*Id.* at 88). The officers arresting Cucuas recovered a loaded Glock 9-millimeter firearm and three (3) cell phones in addition to just over one (1) pound (16.45 ounces) of the higher grade methamphetamine and just over half a pound (8.12 ounces) of the lesser grade methamphetamine, along with the $4,000.00 in currency from inside of the Kia Sorenta. (*Id.* at 89-90, 121, 123, 125, 130, 131-32; Trial Exhibits C-17, 30, 38, 40-41). The officers who arrested Hernandez-Solorio and Solorio-Flores from the Dodge Charger recovered three (3) cell phones from the center compartment, dash slot and passenger floor as well as a cell phone from the right front pants pocket of passenger Hernandez-Solorio. (*Id.* at 74, 93, 99; Trial Exhibits C-19, 20, 21 and 22).

After obtaining search warrants for the phone records, Detective Echevarria matched up phone calls and text messages from the call detail records provided by the cell phone providers. (*Id.* at 102). Through Detective Echevarria's investigation, law enforcement was able to determine who the phones belonged to and link up the text messages and phone calls concerning the August 31, 2013 delivery and bust. (*Id.* at

12

100-114; Trial Exhibit C-27). In that regard, the Commonwealth ascertained that Appellant had used two (2) phones to communicate with other members of the organization as well as with Detective Echevarria. (*Id.* at 105, 112-14). Of particular interest were calls and text messages to and from Montilla to and from Appellant after their codefendants had not returned from the drug deal on August 31ST, the codefendants having been arrested unbeknownst to Montilla and Appellant at the time. (*Id.*).

Appellant was arrested on or about October 7, 2013. On December 19, 2013, the Commonwealth filed a notice of joinder of cases providing Appellant notice that the Commonwealth intended to try Appellant's case together with co-defendants Soloria-Flores, Hernandez-Solorio, Montilla, Morales-Soria and Cucuas. (Commonwealth's Notice of Joinder of Cases Pursuant to Pennsylvania Rule of Criminal Procedure 582, filed 12/19/13). This court scheduled the matter for a jury trial to commence on September 15, 2014. The five co-defendants entered pleas of guilty before the commencement of trial.

On September 12, 2014, the Commonwealth filed a motion in *limine* to admit other bad acts under Pa.R.E. 404(b) seeking allowance to admit evidence of Appellant's three (3) narcotics sales to undercover Trooper Geraldo Martinez at the garage in the city of Reading, Berks County. Specifically, the Commonwealth requested the court's permission to elicit evidence of the three (3) prior narcotics transactions to prove intent as well as a common scheme, plan and design and to negate the anticipated

13

defense that Appellant was unaware of his involvement in a larger organization or conspiracy and unaware that he was delivering a sample that would result in a larger transaction. (Commonwealth's Motion in *Limine* to Admit Other Bad Acts under Pa.R.E. 404(b), filed 9/12/14; N.T. Trial 9/15/14, at 12-13).

After swearing in the jury for the trial, the court heard oral argument by Counsel outside the presence of the jury, on Monday afternoon, September 15, 2013. (N.T. Trial 9/15/13, at 12-16). Following argument and an opportunity to review the law, the undersigned granted the Commonwealth's motion.[9] The undersigned also stated to Defense Counsel that the court would not be opposed to giving a limited jury instruction if Counsel wanted to prepare and submit one for approval. (N.T. 9/15/14, at 40).

Prior to the start of testimony, Defense Counsel submitted a proposed limited jury instruction to be read following the testimony of the undercover State Trooper who had conducted the controlled buys from Appellant in Reading, Berks County.[10] (N.T. Trial 9/16/14, at 8-9, Trial

---

[9] The court explained as follows:

> It's being granted because it will afford the Commonwealth the opportunity to show intent, common scheme, plan, and design. I think this case is made stronger, frankly, by the fact that the Commonwealth charged under corrupt organizations, because in the bill of information it referenced pattern, and certainly that would go to the common scheme, plan, and design.

(N.T. 9/15/14, at 39-40).

[10] The court also explained to Counsel on the record the following:

14

Exhibit D-1). On September 16, 2014, the jury heard the testimony of Detective Echevarria, Trooper Martinez, two of the surveillance officers, an officer on the arrest team and Detective Michael Fedak. After Trooper Martinez testified, the undersigned read the following limiting instruction:

> Members of the jury, you have just heard the testimony of Trooper Geraldo Martinez. You heard testimony concerning acts that were alleged to have occurred in Berks County, Pennsylvania.
>
> The defendant is not charged in this case with those alleged deliveries, and they are not before you in this case to determine guilt or innocence. You are free, as with any witness, to accept or reject, in whole or in part, the testimony presented to you. The Commonwealth admitted this evidence from which it asks you to draw an inference that the defendant had knowledge his acts were part of a conspiracy through a common scheme, plan, or design. I instruct you that if you accept this testimony, to only consider it for that limited purpose.

(N.T. Trial 9/16/14, at 157).

Detective Fedak testified as an expert in drug trafficking and distribution. (*Id.* at 163). Specifically, Detective Fedak testified, *inter alia*, about the significance of providing samples of narcotics before the actual exchange of money as it relates to Appellant's role in the organization, the

---

I read over the jury instructions for corrupt organizations last evening. The jury instruction references that the Commonwealth must prove that the defendant committed two or more crimes that are called acts of racketeering, and I confirmed with the Commonwealth in the presence of defense counsel that those two crimes that the Commonwealth -- more [than] that the Commonwealth intends to prove complied with that requirement under corrupt organizations. Neither one of those or any of those are the alleged offenses that I permitted to be referenced as part of the 404(b) prior bad acts.

(N.T. 9/16/14, at 10).

15

structure of the organization, as well as the use of cell phones as a necessity in this type of organization in order for the enterprise to be successful. (*Id.* at 164-73).

Although Appellant did not testify at trial, he denied any knowledge of a conspiracy or larger organization. His defense, for the most part, consisted of the fact that he did not receive any money in exchange for the samples of narcotics he provided to the undercover detective in Montgomery County, that he was not present for the larger transaction on August 31, 2013, and that any drugs he may have sold, he did so to support his own habit and not as part of a conspiracy.

The jury returned its verdict of guilty on all counts on Wednesday, September 17, 2014. The court deferred sentencing until such time as the Adult Probation Department could provide a PPI Evaluation and a Pre-Sentence Investigation Report.

At sentencing on December 18, 2014, Appellant again denied any involvement in a conspiracy or an organization. (N.T. Sentencing 12/18/14, at 14-15). As it pertained to Appellant's case in Berks County, the undersigned explained his reasoning for imposing a consecutive sentence as follows:

> Before imposing sentence, I have considered the presentence investigation report significantly as well as the PPI report. I was the trial judge in this case, and I've had the opportunity to review all the testimony as it was presented. I've also certainly had the opportunity now to hear [Appellant] by way of a statement in allocution as well as the well-made arguments by counsel. So I will enter the following sentence:

16

\* \* \* \*

> Significantly -- and I do want to say significantly -- this sentence will not commence -- will run consecutive to the sentence that's imposed in Berks County. It's important that that be made part of the record. It furthers, in my judgment, the need to differentiate the crimes committed in Berks County from Montgomery County. It also demonstrates the nature of this organization being a multi-county organization.

(*Id.* at 15-17).

Counsel for Appellant and Appellant both filed post-sentence motions. (Defendant's Counsel's Post-Sentence Motion, filed 12/19/14; Defendant's *pro se* Motion for Post-Sentence Relief, filed 1/23/15). At argument on Friday, March 20, 2015, Counsel argued both motions. (N.T. Hearing on Defendant's Petition for Post-Sentence Relief 3/20/15). The court denied Appellant's motions by order dated April 3, 2015. On April 17, 2015, Appellant filed a notice of appeal to the Superior Court. The undersigned directed Appellant to file a concise statement of the errors complained of on appeal ("Statement") by order dated April 20, 2015. Appellant filed his Statement on May 7, 2015.

## III. ISSUES

Appellant now raises the following issues on appeal:

1.      [A-3] The Honorable Court committed an error of law and/or abuse of discretion when it [sic] [Appellant's] motion at trial and in Post Sentence Motions for a new trial where the Commonwealth failed to present sufficient evidence for the trier of fact to find [Appellant] guilty of the crimes charged.

2.      [A-2] The Honorable Court committed an error of law and/or abuse of discretion when it denied [Appellant's] motion

17

at trial and in Post Sentence Motions for a new trial where the verdict was against the weight and sufficiency of evidence.

3.    [A-4]  The Honorable Court committed an error of law and/or abuse of discretion when it allowed evidence of prior bad acts committed in Berks County and subject to an open case alleging evidence of sales of narcotics, common phone numbers and other evidence that had not been adjudicated on at the time of trial via the testimony of Trooper Martinez.

4.    [A-5]  The Honorable Court committed an error of law and/or abuse of discretion when it denied post-trial motions for a new trial based on the evidence allowed under 404[b] introduced by Trooper Martinez.

5.    [A-6]  The Honorable Court committed an error of law and/or abuse of discretion when it allowed prior unadjudicated acts, via testimony of Trooper Martinez, alleged to have occurred in Berks County where [Appellant] would have had to waive his 5th Amendment rights and in violation of Due Process to defend himself in the Montgomery County case with the case being open in Berks County.

6.    [A-1]  The Honorable Court committed an error of law and/or abuse of discretion when it denied [Appellant's] Post Sentence Motion for a new Sentence because the sentence was unduly harsh and excessive.

(Statement, filed May 7, 2015).[11]

## IV.    DISCUSSION

In his first two issues on appeal, Appellant seeks either a judgment of acquittal or a new trial, contending that the Commonwealth failed to present sufficient evidence and that the verdict was against the weight of the evidence.  Appellant is mistaken.

The appellate scope and standard of review are long settled:

---

[11] The court has reordered Appellant's issues for ease of disposition.  Appellant's original order of issues presented in his Statement is noted with an [A-*.].

18

As a general matter, [appellate] review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also* [ *Aguado*, 760 A.2d at 1185] ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). "[W]here no single bit of evidence will by itself conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699, 704 (1989).

Thus, our Courts have recognized that proof of guilt may be inferred entirely from evidence of circumstances that attended the commission of the crime. *See Brewer*, 876 A.2d at 1032. "The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa.Super.2002)). Nevertheless, "[t]he requirement of the law [remains] that in order to warrant a conviction[,] the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt." *Commonwealth v. Bybel*, 531 Pa. 68, 611 A.2d 188, 189 (1992) (quoting *Commonwealth v. New*, 354 Pa. 188, 47 A.2d 450, 455 (1946)).

*Commonwealth v. Kinard*, 95 A.3d 279, 291-92 (Pa.Super. 2014) (*en banc*)

(quoting *Commonwealth v. Barker*, 70 A.3d 849, 854 (Pa.Super. 2013) (*en banc*)). *Accord Commonwealth v. McCurdy*, 943 A.2d 299, 301-03

(Pa.Super. 2008) (finding evidence sufficient to support conviction for

corrupt organizations under 18 Pa.C.S.A. § 911(b)(3)). Finally, an appellate court will review the entire trial record, even evidence which is impermissibly introduced, when evaluating a sufficiency claim. *Commonwealth v. Sanders*, 42 A.3d 325, 329 n.1 (Pa.Super. 2012 (citing *Commonwealth v. Reed*, 605 Pa. 431, 436, 990 A.2d 1158, 1161 (2010)); *accord Commonwealth v. Tejada*, 107 A.3d 788, 793 (Pa.Super. 2015) (citation omitted).

Herein, the Commonwealth charged Appellant with corrupt organizations,[12] possession of a controlled substance with intent to deliver,[13] criminal conspiracy to commit possession with intent to deliver a controlled substance,[14] dealing in unlawful proceeds[15] and criminal use of

---

[12] Pursuant to 18 Pa.C.S.A. § 911(b)(1), the Commonwealth had to prove beyond a reasonable doubt that Appellant, having received income derived, directly or indirectly, from a pattern of racketeering activity in which he participated as a principal, did unlawfully use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of any enterprise.

[13] Pursuant to 35 P.S. § 780-113(a)(30), the Commonwealth had to prove beyond a reasonable doubt that Appellant did deliver or possess with intent to deliver a controlled substance classified in Schedule I, II, III or IV to wit: Methamphetamine.

[14] Pursuant to 18 Pa.C.S.A. § 903(a) and 35 P.S. § 780-113(a)(30), the Commonwealth had to prove beyond a reasonable doubt that Appellant had the intent of promoting or facilitating the crime of possession with the intent to deliver a controlled substance with another and agreed that they or one or more of them would engage in conduct which constitutes such crime or attempt or solicitation to commit such crime; or agreed to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. *See Commonwealth v. Kinard*, 95 A.3d 279, 293 (Pa.Super. 2014) (*en banc*) (citation omitted); *Commonwealth v. Watley*, 81 A.3d 108, 115-16 (Pa.Super. 2013) (*en banc*) (quoting *Commonwealth v. Feliciano*, 67 A.3d 19, 25-26) (*en banc*)).

[15] Pursuant to 18 Pa.C.S.A. § 5111(a)(1), the Commonwealth had to prove beyond a

20

communication facility.[16] Regarding the charge of criminal conspiracy in particular, the Superior Court in *Kinard, supra* reiterated the following precepts:

> "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa.Super.1998) (*en banc*), *appeal denied*, 559 Pa. 689, 739 A.2d 1056 (1999) (citations omitted). Therefore, where the conduct of the parties indicates that they were acting in concert with a corrupt purpose in view, the existence of a criminal conspiracy may properly be inferred. *Commonwealth v. Snyder*, 335 Pa.Super. 19, 483 A.2d 933, 942 (Pa.Super.1984). This court has held that the presence of the following non-exclusive list of circumstances when considered together and in the context of the crime may establish proof of a conspiracy: (1) an association between alleged conspirators, (2) knowledge of the commission of the crime, (3) presence at the scene of the crime, and (4) participation in the object of the conspiracy. *Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 636 A.2d 1173, 1177 (Pa.Super.1994).

95 A.3d at 293.

Instantly, viewing the entire record in the light most favorable to the Commonwealth, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence, the evidence adduced at trial established the material elements of each crime charged. Specifically, the

---

reasonable doubt that Appellant conducted a financial transaction with knowledge that the property involved represented the proceeds of unlawful activity, he acted with the intent to promote the carrying on of the unlawful activity.

[16] Pursuant to 18 Pa.C.S.A. § 7512(a), the Commonwealth had to prove beyond a reasonable doubt that Appellant did unlawfully use a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime, to wit: possession with intent to deliver a controlled substance.

evidence demonstrated that Appellant was involved in a conspiracy with Cucuas, Hernandez-Solorio, Montilla, Morales-Soria and Solorio-Flores to engage in the business of selling illegal narcotics. Contrary to Appellant's assertion otherwise, the fact that Appellant did not personally receive cash in exchange for the samples at the time he delivered them to Detective Echevarria is of no moment. Further, the jury found the assertion that Appellant had no "knowledge of the greater amount" of narcotics for possible delivery at a later time incredible under the circumstances.

It is noteworthy that Appellant did not specify how the evidence was insufficient or specifically which of the convictions were unsupported with sufficient evidence. However, having listened to each witness and observed all of the evidence during the entire trial, this court concludes that the evidence was sufficient to support each of Appellant's convictions as found by the jury. During this three-day trial, the jurors heard Montgomery County Detective Echevarria testify about his specific dealings with co-defendants Montilla and Morales-Soria and Appellant by cell phone as well as in person. Montilla gave Detective Echevarria Appellant's cell phone number on August 12, 2013, as the contact number for the person who would deliver the sample of methamphetamine. Detective Echevarria spoke with Appellant on the cell phone number that co-defendant Montilla had provided. Appellant arrived to deliver the sample in the same black pickup truck on August 12, 2013, that Corporal Leporace saw in Reading earlier in the day on August 31,

22

2013, the day of the final large delivery. Appellant told Detective Echevarria to place future orders through Montilla and Appellant would deliver those orders. Co-defendants Hernandez-Solorio and Solorio-Flores arrived at Zerns for the large quantity of methamphetamine deal on August 31, 2013, in the same Dodge Charger that Corporal Leporace saw in Reading earlier that day talking to people in the same black pickup truck used by members of this organization.

The jury also heard the testimony of State Trooper Martinez who described in detail the three (3) controlled buys of methamphetamine on June 10, July 10 and July 31, 2013, for cash from Appellant in Reading after Appellant first provided a sample and used the same type of containers with a secret compartment to hide the sample that he used when he brought the two samples to Detective Echevarria in Gilbertsville on August 12, 2013. In addition, the jury heard the testimony by officers of the arrests of Appellant's co-defendants leading to the discovery of cell phones used by the participants in this conspiracy. Detective Echevarria explained to the jury how he obtained the phone records for these cell phones and matched up phone calls and text messages amongst the participants including Appellant. Finally, the jury heard the testimony of Detective Fedak, who explained the significance of providing samples before the actual exchange of money and delivery of the larger quantity of illegal narcotics.

In the instant case, there was ample evidence in the record from which a reasonable jury could conclude that Appellant was one of the men involved in a conspiracy to possess illegal narcotics with the intent to distribute as well as a participant in a corrupt organization. The Commonwealth met its burden of proof for each and every element of the crimes charged.

Additionally, the well-established standard of review on a claim that a verdict is against the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the [trial] court's verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa.Super. 2013) (quoting *Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003)); *accord Commonwealth v. Hankerson*, __ A.3d __,__ (2015 WL 3549969 (Pa.Super. 2015) (citations omitted).

The undersigned had the opportunity to listen to the testimony described above, observe the witnesses' demeanor and the demonstrative evidence as well as observe the jury throughout this trial. It was exclusively within the jury's province to weigh the Commonwealth's direct

24

and circumstantial evidence. Appellant's convictions are not so contrary to the evidence as to shock one's sense of justice. Accordingly, Appellant's sufficiency and weight claims merit no relief.

In his third, fourth and fifth issues on appeal, Appellant asserts that the court erred or abused its discretion in allowing evidence in this trial of Appellant's narcotics transactions with an undercover officer which occurred in Berks County and for which charges were awaiting adjudication in Berks County. Appellant argues that the evidence was more prejudicial than probative and that the court erred in allowing this evidence because to defend against it would have required Appellant to waive his Fifth Amendment rights in this case to defend against the Berks County allegations. Appellant asserts that his testimony in this case then would have been used against him in the Berks County case. (Post Sentence Motion Brief, filed 1/12/15, at 8).[17]

The Commonwealth proffered Trooper Martinez's testimony concerning three (3) prior narcotics transactions with Appellant to demonstrate intent as well as a common scheme, plan or design and to dispel Appellant's defense that he was unaware of his involvement in a conspiracy or a larger corrupt organization in the Montgomery County case (in other words, a lack of knowledge). In support, the Commonwealth cited *Commonwealth v. Pattakos*, 754 A.2d 679 (Pa.Super. 2000) (evidence

[17] Counsel candidly admitted that he had not been able to find any case law on point to submit to the court specifically on open cases in different jurisdictions. (N.T. Hearing on Defendant's Petition for Post-Sentence Motion and Relief, filed 3/20/15, at 8).

of prior uncharged drug transactions properly admitted to establish relationship between parties) and *Commonwealth v. Echevarria*, 575 A.2d 620 (Pa.Super. 1990) (evidence of prior uncharged drug transactions properly admitted to prove intent). According to Appellant, however, "knowledge of the greater amount . . . has always been the sticking point". (N.T. Trial 9/15/14, at 15). Appellant proffers that he is entitled to a new trial as a result of this court's error. The court disagrees.

Writing for the majority on the *en banc* panel in *Kinard, supra*, the Honorable Kate Ford Elliott explained Pennsylvania law on this issue in pertinent part as follows:

> Admission of evidence rests within the discretion of the trial court, and we will not reverse absent an abuse of discretion. *Commonwealth v. Washington*, 63 A.3d 797, 805 (Pa.Super.2013). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Martinez*, 917 A.2d 856, 859 (Pa.Super.2007).
>
> Generally speaking, evidence is admissible if it is relevant, that is, "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Williams*, 586 Pa. 553, 581, 896 A.2d 523, 539 (2006) (citation omitted); Pa.R.E. 402. It is settled law in this Commonwealth that other bad acts evidence is inadmissible to prove a defendant's propensity to commit crime. *Commonwealth v. Brookins*, 10 A.3d 1251, 1256 (Pa.Super.2010), *appeal denied*, 610 Pa. 625, 22 A.3d 1033 (2011). Nonetheless, bad acts evidence may be introduced for other limited purposes, including, but not limited to, establishing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake

26

or accident, common scheme or design, *modus operandi,* and the natural history of the case. *Id.;* Pa.R.E. 404(b)(2). This evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

> It has been succinctly stated that (t)he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

*Commonwealth v. Spruill,* 480 Pa. 601, 604–605, 391 A.2d 1048, 1049 (1978).

*Kinard, supra* at 284. Intent, for example, is a mental state which "can be inferred from conduct." *Commonwealth v. Ross,* 57 A.3d 85, 101 (Pa.Super. 2012) (*en banc*) (citation omitted).

The Pennsylvania Rules of Evidence specifically provide as follows:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

27

Once the court concludes that the evidence is admissible for one or more of the limited purposes, it must then conduct a balancing inquiry to determine whether the evidence's probative value outweighs its potential for unfair prejudice. *Commonwealth v. Hairston*, 624 Pa. 143, 84 A.3d 657, 665, 667 (2014) (citation omitted). Evidence of other crimes will not be prohibited merely because it is harmful to the defense. *Id.* at 666 (citing *Commonwealth v. Dillon*, 592 Pa. 351, 925 A.2d 131 141 (2007)). Rather, "'unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Hairston, supra* (citing Pa.R.E. 403 cmt.).

Finally, Pennsylvania appellate courts have also reiterated the presumption that a jury will follow the trial court's instructions. *Commonwealth v. Hoover*, __ Pa. __, 107 A.3d 723, 731-32 (2014) (citation omitted); *Commonwealth v. Travers*, 564 Pa. 362, 366, 768 A.2d 845, 847 (2001) (citations omitted). In both *Kinard, supra* and *Echevarria, supra*, the respective trial court gave a cautionary instruction to the jury which outlined the purposes for which the prior bad act evidence at issue could be considered. In both cases, the Superior Court determined that the limiting instruction regarding the purpose for which the jury could consider the evidence either cured or minimized any possible prejudicial effect of the evidence at issue. *Kinard, supra* at 287; *Echevarria, supra* at 623. *Accord Hairston, supra* at 160, 84 A.3d at 666-67 (discussing cases).

28

The Commonwealth sought to introduce evidence of Appellant's prior alleged crimes in Berks County to demonstrate the intent element of the conspiracy to commit possession with intent to deliver charge as well as the absence of mistake and a common scheme, plan, or design. (Commonwealth's Motion in *Limine* to Admit Other Bad Acts Under Pa.R.E. 404[b], filed 9/12/14). The proffered evidence included three (3) deliveries by Appellant to an undercover state trooper with similarities to the instant crimes as follows: 1) the first delivery included a sample of a high grade methamphetamine before the purchase and delivery of a larger quantity, 2) the Reading, Berks County sales were approximately one (1) month earlier of the delivery of the sample in Gilbertsville, Montgomery County,[18] 3) Reading and Gilbertsville are relatively close geographically with Reading located in eastern Berks County and Gilbertsville in western Montgomery County, 4) the use of containers with concealed compartments used to hide the illegal narcotics samples in both counties and 5) Appellant used the same phone number to conduct business in both counties.

This testimony was directly relevant to the charges of criminal conspiracy to commit possession with intent to deliver a controlled substance (methamphetamine). The evidence was probative of Appellant's knowledge that he was part of a group of men engaged in the business of

---

[18] Appellant's sales to Trooper Martinez occurred on June 10, 2013; July 10, 2013, and July 31, 2013. Appellant's delivery of the sample to Detective Echevarria occurred on August 12, 2013.

29

selling illegal narcotics. Trooper Martinez's testimony was also relevant to establish the chain of events and Appellant's course of criminal conduct. Defendant's claim that he was not part of a conspiracy or a larger organization is buttressed by evidence which includes the fact that he had to call his "boss" in order to negotiate the price of the methamphetamine. Further, Trooper Martinez's testimony provided context for why law enforcement was in Reading performing surveillance when they observed the occupants of the Dodge Charger speaking with occupants of the black pickup truck. As a result, the jury could infer a conspiratorial agreement to engage in the sale of methamphetamine based on the direct and circumstantial evidence presented by the Commonwealth.

Although this prior bad acts evidence may have been prejudicial, it was not unduly so. Moreover, any prejudicial effect of Trooper Martinez's testimony was cured by this court's limiting instructions to the jury. As the trial courts did in *Kinard, supra* and *Echevarria, supra,* this court provided the jury with an instruction drafted by Counsel regarding the limited purpose for which they could consider the evidence. Also, as in those cases, the jury was then free to accept or reject the evidence and to give it whatever weight they felt it deserved.

The court notes that Appellant also based his objection to the introduction of Trooper Martinez's testimony in part on his Fifth

Amendment privilege against self-incrimination.[19]  While the argument appears to have some merit on its face, after a review of the relevant law, this court concluded any reliance on that argument was misplaced.

"The Fifth Amendment provides 'no person ... shall be compelled in any criminal case to be a witness against himself[.]'". *Commonwealth v. Cooley*, ___ Pa. ___, ___, 118 A.3d 370, 375 (2015) (quoting U.S. Const. amend. V); *Commonwealth v. Knoble*, 615 Pa. 285, 290, 42 A.3d 976, 979 (2012). "The Fifth Amendment privilege is not self-executing, and answers are generally not considered compelled 'within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege.'" *Veloric v. Doe*, ___ A.3d ___, ___ (Pa.Super. 2015) (2015 WL 5316868 at *5) (quoting *Knoble, supra*).  "[T]he Fifth Amendment proscribes only self-incrimination obtained by a **genuine compulsion** of testimony." *Commonwealth v. Brown*, 26 A.3d 485, 497 (Pa.Super. 2011) (emphasis added) (citing *Commonwealth v. Padillas*, 997 A.2d 356, 362 (Pa.Super. 2010)).  Compulsion exists for Fifth Amendment purposes when some factor denies an individual "the 'free choice to admit, to deny, or to refuse to answer.'"  *Brown, supra* (citation omitted) (holding requirement that minor must admit guilt to demonstrate amenability to rehabilitation in juvenile system during decertification hearings violated

---

[19]  Counsel argued as follows: "it deprives my client of his Fifth Amendment rights because he's got an open county [sic] in Berks County, Pennsylvania, and he would have to waive his Fifth Amendment rights to give his version, **potentially**, as a defense in this matter." (N.T. Trial 9/15/14, at 15) (emphasis added).

minor's Fifth Amendment privilege). "Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *Padillas, supra* (quoting *United States v. Washington,* 431 U.S. 181, 187, 97 S.Ct. 1814, 1818-19, 52 L.Ed.2d 238, 244, 245 (1977)). "[A]n attempt to invoke the Fifth Amendment privilege is specific to the testimony being compelled." *Veloric, supra.*

Instantly, this court opines that the possibility that Appellant would have had to waive his Fifth Amendment rights to give his version of the events in Berks County as a defense in this matter does not constitute a genuine compulsion of testimony as defined by the case law to invoke the privilege. There had been no genuine compulsion at the time of trial and Appellant offered no specific argument as to how he would not be able to invoke the privilege and refuse to answer questions about the Berks County charges if he decided to take the stand in his defense and had the Commonwealth posed any questions about his prior bad acts. Appellant was not on trial for the three offenses charged in Berks County, which the court made clear to the jury. As stated above, the court admitted the evidence for a very limited purpose. The requested relief is not due.[20]

In Appellant's final issue on appeal, he claims that the court erred or abused its discretion in denying his post-sentence motion to modify his sentence. Specifically Appellant complains that his sentence of four (4) to

---

[20] Moreover, from a practical standpoint, Appellant subsequently pled guilty to the Berks County charges. If the requested remedy, a new trial, were to be granted, those offenses are now convictions and the issue would be moot.

32

eight (8) years, although clearly within the guidelines, imposed consecutive to the Berks County case wherein Judge Lieberman sentenced him to fifteen (15) months to ten (10) years, is unduly harsh and excessive because evidence of the Berks County buys was the "determining factor" in the Montgomery County convictions. (Appellant's Post Sentence Motion Brief, filed 1/12/15, at 2-3). Appellant suggests that he has been sentenced twice for the same offenses. Appellant is mistaken and his claim lacks merit.

The Superior Court reviews a claim involving the discretionary aspects of sentencing utilizing the following principles:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006). In reviewing a sentence on appeal, the appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases [,] the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781.

*Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa.Super. 2012). In addition, our Supreme Court has noted that:

> "the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence."

*Commonwealth v. Glass*, 50 A.3d 720, 727-28 (Pa.Super. 2012) (quoting *Commonwealth v. Perry*, [612 Pa. 557, 571,] 32 A.3d 232, 240 (2011)).

The *Perry* Court further explained the sentencing court's discretion as follows:

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. *Id.* Indeed, as we explained in [*Commonwealth v.*] *Walls,* [592 Pa. 557, 926 A.2d 957 (2007),] there are significant policy reasons underpinning this deferential standard of review:
>
>> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not

34

be lightly disturbed. Even with the advent of sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

*Id.* at 565, 926 A.2d at 961-62 (citations and footnote omitted).

*Perry, supra* at 565, 32 A.3d at 236-37.

The sentencing court's decision must be accorded great weight because it was in the best position to measure "the defendant's character, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Marts,* 889 A.2d 608, 613 (Pa.Super. 2005) (citation omitted). In addition, "the trial court is permitted to consider the seriousness of the offense and its impact on the community." *Id.* at 615.

There is no requirement under the current Sentencing Code that a sentencing court's imposition of sentence "must be the minimum possible confinement". *Walls, supra* at 571, 926 A.2d at 965; *accord Commonwealth v. Moury,* 992 A.2d 162, 171 (Pa.Super. 2010). Indeed, the Superior Court will also reverse a sentence that is too lenient as unreasonable. *See Commonwealth v. Daniel,* 30 A.3d 494 (Pa.Super. 2011) (concluding sentencing court's failure to take into account the extremely serious nature and circumstances of the offenses and the defendant's failure to accept responsibility in fashioning a sentence that was a downward departure from the guidelines was irrational and unsound).

35

It is also long settled that Pennsylvania sentencing courts have discretion pursuant to 42 Pa.C.S.A. § 9721 to impose sentences consecutively or concurrently to others being imposed at the same time or to sentences already imposed. *Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa.Super. 2015) (*en banc*) (citing *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa.Super. 2010)); *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa.Super. 2014) (citation omitted); *Moury, supra* (citation omitted). Moreover, "the imposition of consecutive rather than concurrent sentences will present a substantial question in only 'the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.'" *Caldwell, supra* (citation omitted); *accord Moury, supra* (citing *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa.Super. 2006)).

In *Pass, supra,* the appellant therein argued that it was unduly harsh and excessive to run an aggregate sentence consecutively to another unrelated sentence imposed earlier when "the same act used to find him in violation of his probation and parole in [the current] four cases was the same act used to find him in violation of [the previous] sentence." The Superior Court panel concluded that the appellant failed to raise a substantial question. *Id.* at 446.

In the case *sub judice*, Appellant presents a similar argument. First, Appellant concedes, as he must, that the sentence imposed is well within the sentencing guidelines. On the two (2) convictions for criminal

conspiracy to commit possession with intent to deliver, the undersigned imposed a sentence of three (3) to six (6) years each, to run concurrent with one another, and a consecutive term of ten (10) years' probation.[21] In addition, the court sentenced Appellant to a consecutive term of one (1) to two (2) years' in prison and a five (5) year period of probation on the conviction for dealing in unlawful proceeds. Appellant received concurrent terms for the remaining convictions except for the determination of guilty without further penalty on the conviction for possession with intent to deliver and the conviction for criminal use of a communication facility. His exposure was far greater.

Appellant complains, however, that imposing this aggregate sentence of four (4) to eight (8) years consecutive to his sentence imposed by Judge Lieberman for the offenses he committed and pled guilty to in Berks County was unduly harsh and excessive. Specifically, Appellant asserts that the testimony of Trooper Martinez concerning the Berks County narcotics sales constituted the determining factor in the Montgomery County jury's convictions. Appellant is mistaken.

As discussed *infra*, Appellant was not charged with the Berks County drug deliveries in this case. Rather, the charges he faced were, *inter alia*, criminal conspiracy to commit possession with intent to deliver

---

[21] Count 6 and Count 7 for criminal conspiracy as an ungraded felony carried an offense gravity score of 11. With Appellant's prior record score of 0, the standard range of the sentencing guidelines is thirty-six (36) to fifty-four (54) months. (Pennsylvania Commission on Sentencing, §303.16 Basic Sentencing Matrix 7th Edition, 12/28/12). Accordingly, the court imposed a sentence in the bottom of the standard range.

and corrupt organizations. The Commonwealth introduced Trooper Martinez's testimony to show intent and knowledge that his actions in Berks County were part of a conspiracy to distribute narcotics through a common scheme, plan, or design. The court also made it clear on the record that the charge of corrupt organizations, which required the Commonwealth to prove two or more acts of racketeering, did not include the offenses committed in Berks County as the acts of racketeering. At sentencing, the undersigned stated on the record "the need to differentiate the crimes committed in Berks County from Montgomery County" as the reason for imposing an aggregate sentence that runs consecutive to the Berks County sentence. The court acted within its discretion and Appellant's final issue warrants no relief.

## V.    CONCLUSION

Based upon the foregoing analysis, this court respectfully requests that the Superior Court affirm Appellant's judgment of sentence.

BY THE COURT:

THOMAS P. ROGERS, J.
**Court Of Common Pleas**
**Montgomery County, Pennsylvania**
**38th Judicial District**

Copies sent on 06/21/16 to:
**By E-Mail:**
Robert M. Falin, Deputy District Attorney,

Montgomery County District Attorney's Office
Sean E. Cullen, Esquire, Counsel for Appellant, Alejandro Ruiz Cabrera
**By First-Class Mail:**
Alejandro Ruiz Cabrera, LV6231
SCI Houtzdale
209 Institution Dr.
Houtzdale, PA 16651

Marian McDonnell
Judicial Secretary